## MARY E. FITZPATRICK vs. THE HARTFORD LIFE AND ANNUITY INSURANCE COMPANY.

Hartford Dist., Jan. T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, JS.

G, a married woman living apart from her husband, applied to the defendant, a life insurance company, for insurance on her life, and in her application, the representations of which were made a part of the contract, stated that she was a widow. She afterwards assigned the policy to the plaintiff in consideration of the agreement of the latter to support her for the rest of her life. The plaintiff afterwards applied to the insurance company for information whether it would make any difference that G's husband was living and whether he could claim any of the insurance. She did not at this time know that G. had represented herself a widow. The secretary referred her to one of the clerks, who took down the papers, but did not examine the application, and told her it would make no difference and that the husband could not make any trouble about it. The plaintiff afterwards paid two assessments on the policy which were made by the company. After G's death the company refused to pay the policy on the ground that it was forfeited by the false statement of the application. Held—

1. That the communication made by the plaintiff to the clerk, she having been referred to him by the secretary, was a communication to the company.
2. That the law would presume that the company had knowledge of and held in mind the representation in the application that G was a widow.
3. That in like manner the law would presume that the company held in mind thereafter the fact communicated to it that G was not a widow at the time of the application.
4. That by demanding and accepting the assessments with this knowledge the company had waived its right to avoid the policy.

A policy of life insurance, without restrictive words, is assignable for a valuable consideration equally with any other chose in action, where not a cover for a wagering transaction.

[Argued January 4th—decided March 20th, 1888.]

ACTION upon two certificates of insurance upon the life of Alice Galliger, held by the plaintiff as assignee; brought to the Superior Court in Hartford County, and tried to the jury before *Torrance, J.*

The certificates were for $1,000 each, were dated July 16th, 1881, and were issued upon an application of the in-

sured in which, in reply to the inquiry, " Are you marrried or single ? " she answered, " A widow." The certificate contained the following provision: " The application on the faith of which this certificate issues is hereby referred to and made a part of this contract." The certificates were in due form assigned to the plaintiff on January 8th, 1884, and notice given to the defendants, and proofs of the death of the insured were furnished the defendants on February 11th, 1886.

Upon the trial the plaintiff offered evidence to prove, and claimed to have proved, that Alice Galliger, the insured, was a woman advanced in years and of infirm health, with no property except these certificates of insurance, and obliged to work for her living; that she had long known the plaintiff, whose grandmother was the sister of her father, and had visited and staid with her; that the consideration of the assignment of the certificates was a written agreement made by the plaintiff that she would give Alice a home with her when she desired it, would support her if she needed it, and would take care of her for the rest of her life; that the plaintiff had no property of her own; that her husband assented to the agreement, but did not become a party to it; and that after the assignment Alice remained with the plaintiff about a month, when she went to work at various places, spending occasionally a few days with the plaintiff, until the spring of 1885, when she became unable to work, and from that time remained most of the time with the plaintiff, who supported and cared for her until her death in February, 1886, paid her doctor's bills and other expenses, and gave her small sums of money from time to time, not exceeding in the whole thirty dollars. The whole amount paid to the defendants both by Alice and the plaintiff, on account of the certificates, was $153.86.

The defendants offered in evidence the application of Alice Galliger for the insurance, which has been mentioned; and introduced R. S. Childs as a witness, and claimed to have proved by him that he took the application, that he propounded all the questions therein to the said Alice, and

wrote her answers correctly as she made them, and that before she signed the application he read it over to her, including her answers as he had written them.

It was admitted that Alice Galliger was not a widow when the application was made, but had then, and up to the time of her death, a husband living, who still lives in Waterbury in this state, but that for many years before she had not lived with or had anything to do with him.

The plaintiff offered evidence to prove and claimed to have proved, that on or about the 20th of July, 1885, she went to the office of the defendant and saw Mr. Ball, the secretary and manager of the company, and told him that she wanted to see about Alice Galliger's insurance; that Mr. Ball referred her to Mr. Preston, a clerk in the employment of the company; that Preston got some papers, among which was the notice of the assignment of the certificates to the plaintiff and also the application for insurance; that Preston looked at the application and asked the plaintiff where Alice was born, and she said, in Ireland; that she told him that Alice was married and not divorced, but had not lived with her husband for a great many years, and asked him if the fact that the husband was alive would make any difference with the company or whether such husband could claim any of the insurance; that Preston told her that so far as the company was concerned it was all right, that it made no sort of difference so far as they were concerned whether the husband was living or not, and that the husband could not make any trouble about it. She also testified that she did not know until after the death of Alice that she had represented herself to be a widow in the application.

The defendants called upon Mr. Ball as a witness, who testified that he was the secretary and general manager of the company, that he never had, to his recollection, any conversation with the plaintiff, and that he never knew that Alice was not a widow until after her death; that Preston was a clerk in the office, having charge of the correspond-

ence, but had no power to make any waiver on behalf of the company.

The defendants also called Mr. Preston as a witness, who testified that he recollected seeing the plaintiff in the office, but he could not recollect that he had any conversation with her as to Alice Galliger's application or insurance.

The plaintiff further offered evidence to prove, and it was admitted, that the company afterwards made two assessments upon these certificates, one dated August 1st, 1885, for $6.68, and one dated November 1st, 1885, for $6.62, which were paid by the plaintiff.

Upon the foregoing facts the defendants asked the court to charge the jury as follows:

1. That the fact that Alice Galliger in her application for insurance, and in answer to the inquiries of the company, represented herself to be a widow, when she knew the fact was that she had a husband then living, rendered the certificates of insurance void.

2. That under the conditions and stipulations contained in the application and the certificate, the only question involved is, were the representations true or false, within the knowledge of the applicant?  And the certificates are void, even though the jury shall believe that the company might have issued the certificates had the applicant stated that she was a married woman.

5. That the defendants are not estopped from setting up these defenses, and cannot be held to have waived their right so to do, unless after their attention had been called to the statement in the application and its falsity, the officers of the company with full knowledge of the facts consented to waive the same.

6. If the jury find that at the time of the assignment the plaintiff had no insurable interest in the life of Mrs. Galliger, and the assignment was taken by the assignee without any adequate consideration, but as a speculation, then the assignment is void.

7. If the jury find that at the time of the assignment the plaintiff had no insurable interest in the life of Alice Galli-

ger, and that the assignment was made and held under such circumstances that it was for the pecuniary interest of the plaintiff that the insured should die rather than live, the contract was against public policy, and therefore void, even though the plaintiff did agree to contribute to the support of the insured during her life.

8. That if the jury should find that the assignment of the policy was in good faith, yet if it be found that the assignment was made upon an agreement to furnish support to the insured during her life, and to pay the assessments thereon necessary to keep the policies alive, the plaintiff can recover no greater amount than the amount expended in the support of Mrs. Galliger and in maintaining the policy, with interest thereon.

The court did not so charge the jury, but charged them as follows:

"The case turns practically upon the question relating to Alice Galliger's statement in her application that she was a 'widow.' About the fact with regard to that there is no dispute between the parties. The question was deliberately asked her: 'Are you married, or single?' And it is admitted that she answered that she was a widow. It is admitted that that answer is not true. The question before you is as to the effect of that untrue answer upon these policies. So far as that is concerned, gentlemen, I charge you in accordance with the claim of the defendant, that if you find as a fact that Alice Galliger in her application for insurance, and in answer to that question, claimed and represented herself to be a widow, when she knew that she had a husband then living, the certificates of insurance issued upon the faith of the application are void, unless the company have waived this defense or are estopped to make it. The plaintiff claims that the company are estopped from making this as a defense, that they waived their right to insist upon a forfeiture for that untrue statement, by the facts that took place at their office in July, 1885. You heard the testimony of the plaintiff and her husband, and the testimony of the officers of the company, as to what took place

in July. The plaintiff claims in substance that she went there at this time to ascertain the effect the fact that the husband of this woman was living would have upon her getting this insurance in full, or whether the husband could make any trouble about it; that in doing that she called at the office, and saw, as she supposed, Mr. Ball, the secretary, and he referred her to Mr. Preston, and that Mr. Preston brought out some papers, and she thinks this application was among them, and that, on her putting that question to him, he answered that he thought it would make no sort of difference whether the husband was living or not, that the husband could claim nothing under the policies, and could make them no trouble. That is in substance the claim of the plaintiff, that the company at this time had knowledge that this husband was living, and that after that, and in full view of that knowledge, the company made two assessments upon her, which she paid, and that these facts estop the company from now claiming that the certificates are void. On that part of the case the burden of proof is upon the plaintiff to satisfy you of these facts. The officers of the company say they knew nothing of this. The plaintiff says she gave them information of this, and with that full information that she gave them they subsequently made the assessments, and about the assessments there is no dispute. It is for you to say whether the story told by the plaintiff and her husband is true. I charge you as the law on this part of the case, that if you believe the story of the plaintiff as claimed here by her, if you believe that what she says took place in that office at that time did in fact take place as she claims it, and that this company, with that information, subsequently made these two assessments which she paid, they are estopped from making this claim now; that they have waived their right to insist upon this forfeiture and cannot now set it up.

"I come now to another part of this case, with reference to the validity of this assignment. The plaintiff claims here as the assignee of this deceased woman, and the defendants say that, under the circumstances detailed in evidence, she

is not entitled to recover. If you find that the company are estopped to set up the claim that the polices were void on account of the answer that she was a widow, you come to this question. The plaintiff claims that this woman, at a time of life when she was broken down, came to her with this policy of insurance, the only property that she had, and made a bargain with her, in substance, that she was to take care of this woman, and furnish her with a home and all that that implies, and that she would make the assignment to her. It is claimed on behalf of the defendants that public policy forbids such an arrangement, and that if such an arrangement is made it is void. So far as this part of the case is concerned there is not much of a question of fact in it; it is substantially a question of law, and a question of law that I am frank to say to you there have been a good many contradictory decisions about, arising from the different views that different tribunals have taken on this question of policy, some having held that it is just as much the policy of the law to forbid the assignment of a valid policy, as it is to forbid the issuing of a policy on the life of another to a man having no insurable interest in it. The point made here is, that this plaintiff had no insurable interest in the life of this woman; that she had no insurable interest by way of a relationship by blood or marriage, and that she had no insurable interest by way of the relation of debtor or creditor, or in any other way. I charge you on this part of the case that if you find that this assignment was made upon the consideration stated by this plaintiff, namely, that she was to give this woman a home, and that it was made in good faith, and not as a mere pretext and a cover, the assignment is good and she may recover upon it. Whether it was made in good faith or not, and whether it was not a mere pretext and cover to a wagering policy, a speculation that the law condemns, and justly condemns, is for you to say; that is, the good faith of it. So far as the law question is concerned, there is no legal objection to this arrangement on the ground that this woman had no insurable interest in the life of Mrs. Galliger."

The jury returned a verdict for the plaintiff, and the defendants appealed for errors in the charge of the court.

*A. P Hyde*, for the appellant.

1. The court erred in charging the jury that, upon the facts claimed to have been proved, there had been a waiver of the forfeiture. It is essential to this result that the defendants should have intended to make the waiver, and that they should have known that the representation by Alice Galliger that she was a widow was a false one. In *Hoxie* v. *Home Ins. Co.*, 32 Conn., 22, it was held that a waiver is the intentional relinquishment of a known right. The court says, on page 40 :—" A waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right, and an intention to relinquish it." That this is a correct statement of the law relating to waiver cannot be denied. It is fully sustained by the late case of *Bennecke* v. *Ins. Co.*, 105 U. S. Reps., 355. In that case the authorities are reviewed, and the court (p. 359) says :—" A waiver of a stipulation in an agreement must, to bé effectual, not only be made intentionally, but with knowledge of the circumstances. This is the rule when there is a direct and precise agreement to waive the stipulation. *A fortiori* is this the rule when there is no agreement, either verbal or in writing, to waive the stipulation, but where it is sought to deduce a waiver from the conduct of the party." And no estoppel can be found unless a waiver is found. The same facts necessary to create the former must show the latter. Bigelow on Estoppel, 503, *et seq.* No estoppel is claimed to arise from any express contract or waiver, but it rests on the assumption that after the officers of the company had been informed of the falsity of the statement in the application, they with that knowledge elected to waive the defect and to treat the policies as valid by laying and collecting assessments upon the policy.

2. The defendants had no knowledge of the falsity of the statement in the application. The knowledge must be actual, and cannot be imputed knowledge. There was no

duty on the part of the defendants to know the contents of their policies and of the applications filed with them, and consequently there is no room for equity to come in and charge them with knowing what they had the means of knowing. The waiver was their voluntary act, if it was made at all, and therefore must have been made in view of facts actually considered. If the communication made to the clerk was in law made to the company, yet the knowledge of the company could not go beyond that of the clerk, and it is clear upon the facts that his attention was not called to the representations of the application. The in quiry made of him by the plaintiff was only whether the husband would have any rights that he could use against them; the representation that the assured was a widow was not referred to or thought of. But even if the fact had been communicated to the clerk that would not have been notice to the company, unless the clerk had informed them of it; and this is not claimed. Ang. & Ames on Corp., §§ 307, 308; *Goodloe* v. *Godley*, 13 Sm. & Marsh., 233, 238; *U. States Ins. Co.* v. *Shriver*, 3 Maryl. Ch. Dec., 381, 388; *Keenan* v. *Dubuque Mut. Fire Ins. Co.*, 13 Iowa, 375; *Ayres* v. *Hartford Fire Ins. Co.*, 17 id., 177, 187; *Forbes* v. *Agawam Mut. Fire Ins. Co.*, 9 Cush., 470, 473.

3. The assignment of the certificates was void as against public policy. Greenhood on Public Policy, 279, 288; Article in 18 Central Law Journal, 346; *Franklin Life Ins. Co.* v. *Hazzard*, 41 Ind., 116; *Franklin Life Ins. Co.* v. *Sefton*, 53 id., 380; *Missouri Valley Life Ins. Co.* v. *Sturges*, 18 Kansas, 93; *Basye* v. *Adams*, 81 Ky., 368; *Gilbert* v. *Moore's Admrs.*, 104 Penn. St., 74; *Langdon* v. *Union Mut. Life Ins. Co.*, 12 Ins. Law Jour., 548; *Alabama Gold Life Ins. Co.* v. *Mobile Mut. Ins. Co.*, 16 id., 351; *King* v. *State Mut. Fire Ins. Co.*, 7 Cush., 1; *Stevens* v. *Warren*, 101 Mass., 564; *Warnock* v. *Davis*, 104 U. S. Reps., 775.

*C. E. Perkins*, with whom was *S. F. Jones*, for the appellee, cited, as to the effect of the receipt of assessments after knowledge of the ground of forfeiture— *Wing* v. *Harvey*,

5 DeG., Macn. & G., 265; *Hodsdon* v. *Guardian Life Ins. Co.*, 97 Mass., 144; *Morrison* v. *Odd Fellows' Mut. Life Ins. Co.*, 59 Wis., 162; as to the defendants being chargeable with knowledge upon the facts—*Post* v. *Clark*, 35 Conn., 342; *Ellis* v. *Ins. Co. of N. America*, 32 Fed. Reporter, 646; *Carroll* v. *Charter Oak Ins. Co.*, 1 Abbott's Court of App. Dec., 316; *Martin* v. *Jersey Ins. Co.*, 44 N. Jer. Law, 273; *Swarzback* v. *Ohio Valley Protective Union*, 25 W. Virg., 622; *Walsh* v. *Ætna Life Ins. Co.*, 30 Iowa, 133; *Armstrong* v. *Turquand*, 9 Irish Com. Law, 32; and as to the policy having been validly assigned—*Lemon* v. *Phœnix Mut. Life Ins. Co.*, 38 Conn., 294, 302; *Ashley* v. *Ashley*, 3 Sim., 149; *Valton* v. *Nat. Fund Life Ins. Co.*, 20 N. York, 32; *Rawls* v. *Am. Mut. Life Ins. Co.*, 27 id., 282; *Mut. Life Ins. Co.* v. *Allen*, 138 Mass., 24; *Conn. Mut. Life Ins. Co.* v. *Schaefer*, 94 U. S. R., 457; *Ætna Life Ins. Co.* v. *France*, id., 561; *N. York Mut. Life Ins. Co.* v. *Armstrong*, 117 id., 591.

PARDEE, J. For the purposes of this case it may be said that on July 16th, 1881, the defendant issued a policy of insurance upon the life of Alice Galliger for the sum of $2,000. In her application, which by agreement was made a part of the contract, she stated that she was a widow, when in fact she had a husband, but during several years had lived apart from him. On January 8th, 1884, she assigned her interest in the contract of insurance to Mary E. Fitzpatrick, the plaintiff, a distant relative, in consideration of the promise of the latter, made with the consent of her husband, to give the insured a home and food and care in sickness, and notified the defendant of the assignment and the consideration upon which it was made. In the spring of 1885 the insured became unable to work, and thereafter was mostly with the plaintiff, who supported and cared for her until her death in February, 1886, paying her medical and other expenses.

Upon this part of the case the charge to the jury was to this effect:—that if they found that the assignment was

made upon the consideration stated by the plaintiff, namely, that she was to give the assignor a home, and was made in good faith and not as a mere pretext and cover, it is good, and the plaintiff may recover.

The plaintiff offered evidence tending to prove, and claimed to have proven, that on July 20th, 1885, she went to the defendant's office for the purpose of asking whether in case of the death of the insured the husband could claim any part of the sum which would then become payable. She spoke to Mr. Ball, its secretary and manager, and told him that she wished to inquire about Alice Galliger's insurance; he referred her to Mr. Preston, a clerk. The latter took from their place Alice Galliger's application for the insurance, and her notice to the defendant of the assignment of the policy to the plaintiff. He looked at the application and asked where Alice Galliger was born; the plaintiff replied, in Ireland, and added that Alice's husband was then living, but had during many years lived apart from her; and asked him if the fact that the husband was living would make any difference with the company; whether he could claim any part of the sum insured, in case of the death of his wife. Mr. Preston told her that it was a matter of indifference to the company whether the husband was or was not living, and that if living he could not make any trouble about it. At this time the plaintiff was ignorant of the fact that Alice Galliger had stated in her application that she was a widow. Subsequent to this conversation the defendant made two assessments upon the policy and received payment thereof from the plaintiff.

Upon this part of the case the court charged the jury to this effect: that if they should find the facts to be as claimed by the plaintiff as to the information given by her to the defendant, and as to the subsequent reception by it of assessments made upon the policy, it had estopped itself from taking advantage of the misstatement of Alice Galliger that she was a widow made in her application; that it had waived its right to insist upon a forfeiture therefor and cannot now set it up. The plaintiff had a verdict.

The following reasons are assigned by the appellant as grounds of appeal:—

1. That the court erred in charging the jury, upon the question of estoppel against setting up the defense that Alice Galliger in her application represented herself as a widow when she had a husband then living, as follows: "If you believe the story of the plaintiff as claimed here by her, if you believe that what she says took place in that office at the time did in fact take place as she claims it, and that this company with this information subsequently made these two assessments, which she paid, they are estopped from making this claim now; they have waived their right to insist upon this forfeiture and cannot now set it up."

2. That upon the question whether the plaintiff had any insurable interest in the life of the insured, the court erred in charging the jury as follows:—" If you find that this assignment was made upon the consideration stated by the plaintiff, that she was to give this woman a home, and that it was made in good faith, and not as a mere pretext and cover, the assignment is good, and she may recover upon it. Whether it was made in good faith or not, and whether it was not a mere pretext and cover to a wagering policy, a speculation that the law condemns, is for you to say; that is, the good faith of it. So far as the last question is concerned, there is no legal objection to this arrangement on the ground that this woman has no insurable interest in the life of Mrs. Galliger. If, therefore, you find that this arrangement was entered into upon the consideration stated by the plaintiff, and was entered into by her and Mrs. Galliger in entire good faith, as she claims, then your verdict, if you are satisfied on the other points of the case, ought to be for the plaintiff."

For the purposes of this case Mr. Ball, the secretary and manager, was the corporation. The plaintiff in speaking to him spoke to it. His act of referring her to Mr. Preston was an act of substitution of the latter for himself, which he might lawfully do. It was a declaration to her that she might make her intended communication to the latter and

when so made it would avail her as fully as if made to himself. Therefore whatever the plaintiff said to Mr. Preston, as a matter of law was said to Mr. Ball and to the corporation.

If she communicated any fact to Mr. Preston of importance, affecting either her own or the rights of the company, and he omitted to communicate it to Mr. Ball, all effects of such omission are to be borne by the corporation. The plaintiff desired and undertook to communicate such a fact directly to the corporation; it preferred to receive and compelled her to make such communication indirectly; it thereby assumed and must bear all risk of failure in the method adopted.

The question arising upon these facts is well stated in the defendant's brief, as follows :—" No estoppel is claimed to arise from any express contract or waiver, but it rests on the assumption that after the officers of the company had been informed of the falsity of the statement in the application, they with that knowledge elected to waive the defect and to treat the policies as valid by laying and collecting assessments upon the policy." The defendant, previous to entering into the contract of insurance, required the applicant to make written answers to certain questions. By agreement this writing became a part of the contract and was retained of course in its possession. Whenever the company exercises any power reserved to it under that contract, which exercise may in any manner affect the position or rights of the insured, at every such moment the law compels it to have in mind all provisions of the contract and interprets every act as being done with reference to them. If in acting the corporation substitutes the measure of recollection which it may happen to possess for the full measure which the law requires of it, and harm ensues, it must bear the burden ; not the insured. And when it and the insured are at any time jointly considering the rights of the parties under the contract, and the latter communicates to it a fact of importance ; a fact which would authorize it to exercise its right to terminate the contract; a fact indeed which

would compel it to decide whether it would exercise or waive that right, then, as a matter of law, that fact is always thereafter in the mind of the corporation; always present in the contract, always to be taken into account, and always to have the fullest legal force, when it is exercising a power reserved in the contract in a matter which may affect the right of the insured. The law imputes knowledge of the terms of the contract to the plaintiff. It will not hear her say that she has not read them; nor, having read, that she had forgotten. What it will not permit to the party who has entered into one contract only, it will not permit to one who has entered into many. The latter must enlarge his power of recollection in proportion as he multiplies his contracts.

Moreover, it would be impossible to state a number within which the defendant must remember and beyond which it may forget. No principle can be supported by a foundation which is uncertainty itself. In *Morrison* v. *Odd Fellows Mut. Life Ins. Co.*, 59 Wis., 162, an action upon a life policy, the defense was the misstatement by the insured in his application as to his age. He answered by proving that at a time considerably subsequent to the taking out of the policy in suit he took a second one from the defendant in which his age was stated correctly. It replied that it did not know of the misstatement; but the court required it to remember both statements, and therefore to have the error in mind when making subsequent assessments upon the first.

In *Bevin* v. *Conn. Mut. Life Ins. Co.*, 23 Conn., 244, the defendant had received information by parol, before it issued a policy applied for, that the applicant intended to go to California from the Atlantic coast overland; and after issuing the policy had like information that he had done so. It received premiums. Held to be estopped from taking advantage of the written warranty by the assured that he would not go across the country. The company was held to the parol information.

In *Goodwin* v. *Dean*, 50 Conn., 517, the plaintiff took a mortgage of real estate in 1867; the defendant as scrivener drew, witnessed and took the acknowledgment of it. The

grantee withheld the deed from record until 1877. In 1876 the defendant took and recorded a mortgage of the same real estate. The plaintiff claimed that his mortgage, although unrecorded, was in equity entitled to precedence of that of the recorded mortgage to the defendant, because the latter had knowledge of the plaintiff's mortgage. Held that the law would not presume that the defendant, at the time he took his own mortgage, continued to have the knowledge of the prior mortgage which he had nine years before. And the head-note is as follows: "A case of this sort, where the knowledge was merely casual, and with nothing to impress the fact upon the mind, is very different from a case where there is a duty upon the party to remember, or the notice is of a fact affecting his interests." This last supposed case is precisely the one at bar. It is the legal duty of a party to remember the terms of his contracts; and the fact which was stated to the defendant affected one of its contracts upon a vital point, and was stated by the other party to that contract. In the quoted case the defendant had knowledge, as a by-stander, that two strangers had made a contract. He was without interest in it. No rule of law required him to remember the fact nine years. And this court said: "The plaintiff's argument assumes that the defendant's case depends upon the presumption that he had forgotten the circumstance. It is not a mere question of forgetfulness; the question is whether he had forgotten anything that he ought to have remembered. Unless he was under some obligation to remember he is not chargeable with negligence in not remembering. The law imposed no duty upon him and his interests did not require it. If, while contemplating taking a mortgage on this property, he had been informed that the plaintiff's mortgage was still outstanding, it would have been his duty to remember it. Due regard to his own interests and to the rights of others required him to remember it, and the law might properly impute knowledge to him; because the law supposes that a man will act with due regard to his own interests, and requires him to act with due regard to the rights of others."

In *Wing* v. *Harvey*, 5 DeGex, Macn. & G., 265, the agent of a life insurance company knew that a person upon whose life it had issued a policy was living beyond prohibited limits. The company was required to have that fact in its remembrance when it subsequently accepted a premium from him.

In *Ellis* v. *Insurance Co. of N. America*, 32 Federal Reporter, 646, the defendant had consented to the assignment of a policy to the purchaser of the property insured. Neither party then had knowledge of the fact that the vendor had violated the terms thereof. Held that the defendant could not set up this fact by way of defense. It had in effect said to the assignee that the policy would be good in his hands; and if said either in ignorance or forgetfulness, the consequences are upon itself, not upon the party who had the right to rely upon its declaration. Here is an estoppel because of something done in ignorance. In the case at bar the defendant not only assented to the assignment of the policy, but it subsequently demanded and accepted premiums upon it; a most emphatic declaration that the policy was good in the hands of the assignee; it demanded premiums, not in ignorance but simply in forgetfulness.

If the fact thus stated bears upon two or more provisions of the contract; if the plaintiff in stating it had knowledge of one only, yet having been stated the law applies it with equal force to each, because knowledge of both is in the mind of the corporation always. The question turns upon its knowledge, not upon the plaintiff's ignorance.

Therefore the law, operating upon the facts, puts the corporation in this position :—the original applicant made a false representation in procuring the insurance; the contract was voidable at its pleasure upon knowledge of the falsehood; but, upon such knowledge, it might elect to keep it in force and reap the attendant advantages. But in doing this and in notifying the insured of such election by subsequently demanding premiums it forfeits the right of avoidance and is held to have entered into a new contract upon a truthful application.

The law, for the protection of human life, will not permit the purchase of a wagering policy; will not permit a person to buy insurance upon the life of another unless he has reasonable ground for believing it to be for his pecuniary interest in some degree that the insured life shall continue; or that there should be tie of blood, or marriage actual or expected. In some jurisdictions the law forbids the transfer of a policy except to a person who has such an interest in the life insured as would have authorized the procurement of the policy.

But we think the weight of argument is in favor of permitting the owner of a contract of life insurance which has the sanction of the law, to sell it upon the most advantageous terms, having the world for a market, provided it is an honest exchange of property and not a mere cover for a wagering transaction. In countless instances and under many forms the law has sanctioned contracts which of necessity must have resulted in pecuniary profit to one person if another had soon died. The danger to human life from this source has not yet become sufficiently appreciable to provoke the condemnation of these. There is no good reason why the law should condemn an entire class of contracts great in number, no more dangerous to life and of equal capacity for good. The rule of law governing all other contracts would seem to be the proper one for these—to uphold those which are honest and beneficial, and annul all which are proven to be covers for fraud.

The solicitude of the law is for the life of the insured. Upon the record Alice Gilliger was a laboring woman, living apart from her husband and childless. If with her chose in action she could purchase from a distant relative a home and food for life, with care in sickness, we are unable to see why the law should forbid it. She was willing to trust her life in the keeping of that relative. We cannot see why the law should be more solicitous for her than she for herself.

In *Conn. Mut. Life Ins. Co.* v. *Schaefer*, 94 U. S. R., 457, the head-note is—" Any person has a right to procure an

insurance upon his own life and assign it to another, provided it be not done by way of cover for a wager policy." And in *Ætna Life Ins. Co.* v. *France*, 94 U. S. R., 561, the court says :—" As held by us in the case of *Conn. Mut. Life Ins. Co.* v. *Schaefer*, any person has a right to procure an insurance on his own life and to assign it to another, provided it be not done by way of a cover for a wager policy." In the subsequent case of *Warnock* v. *Davis*, 104 U. S. R., 775, the expressions to the effect that the law permits a transfer only to a person who has an insurable interest in the life insured, were doubtlessly occasioned by the belief that the contract under consideration was a wager. For, in the case of *N. York Mut. Life Ins. Co.* v. *Armstrong*, 117 U. S. R., 591, Mr. Justice°FIELD, returning to the subject, says :—" A policy of life insurance without restrictive words is assignable by the insured for a valuable consideration equally with any other chose in action, when the assignment is not made to cover a mere speculative risk and thus evade the law against wager policies;" citing *Warnock* v. *Davis*, *supra*.

This rule prevails in Massachusetts, New York and Rhode Island; also in England. *Mutual Life Ins. Co.* v. *Allen*, 138 Mass., 24 ; *Valton* v. *Nat. Fund Life Ins. Co.*, 20 N. York, 32; *Rawls* v. *Am. Mut. Life Ins. Co.*, 27 id., 282; *Clark* v. *Allen*, 11 R. Isl., 439; *Ashley* v. *Ashley*, 3 Simons, 149. In *Lemon* v. *Phoenix Mut. Life Ins. Co.*, 38 Conn. 294, this court said :—" A question was made before us that Miss Lemon had not an insurable interest in Mr. Peterson's life. If she had undertaken to obtain, and had obtained, an insurance on his life, that question might have arisen. But surely Mr. Peterson had an insurable interest in his own life, and he obtained the insurance on it, and we know of no law to prevent him from making the policy payable, in case of his death, to the person to whom he was affianced; and if such policy is delivered as a gift to the party to whom it is payable, we know no law to prevent such a gift from becoming effectual."

In *Cunningham* v. *Smith's Admr.*, 70 Penn. St., 450, a per-

son paid for insurance upon his own life from money furnished him by another, and assigned the policy to that other in pursuance of an agreement made before it was taken. In sustaining the assignment the court said, in effect, that the assignee might have had such an interest in the life insured as would have enabled him to insure it in his own name, although this was doubtful; but the insured had an interest in his own life, and if he was willing to insure himself with the money of another and to assign his policy to him, there is no principle of law which can prevent such transaction.

There is no error in the judgment complained of.

In this opinion PARK, C. J., and CARPENTER, J., concurred.

LOOMIS, J., (dissenting.) I concur entirely with the majority of the court in the principle that would make a demand and acceptance of assessments on the policy by the insurance company, after it had acquired knowledge of the incorrectness of the statements of the insured in her application, a waiver of all right to insist upon a forfeiture of the policy by reason of such misstatements; but I think they err in holding that, upon the facts of the case, the insurance company is in law chargeable with such knowledge. They treat the demand and acceptance of the assessments as a waiver by the insurance company of its right to take advantage of the untruthfulness of the statement of Alice Galliger that she was a widow, the fact being that she then had a husband. A waiver is an intentional relinquishment of a known right. This definition is a well settled one. The intention courts often find from conduct that is inconsistent with an intent to insist upon the right. But the right relinquished must be one that is actually known to the party making the waiver. No duty rested on these defendants to make the waiver. It was to be, if made, a wholly voluntary act on their part. Equity does not come in, either to impose a duty or to keep watch over their conduct. It is their

actual intent upon actual knowledge that must be established to make the case one of waiver.

Now what are the facts here? Mrs. Fitzpatrick, the assignee of the policy and the plaintiff in the case, went to the office of the company to make a certain inquiry with regard to the policy, and there informed a clerk to whom the secretary had referred her, that Alice had a husband, but had not lived with him for many years; and asked whether his being alive would make any difference with the company or whether he could claim any of the insurance; to which the clerk replied that "it made no sort of difference so far as they were concerned whether he was living or not and that he could not make any trouble about it." Here it is perfectly clear that all the plaintiff had in mind was the possible trouble that the husband might make, in case of Alice's death, by claiming the money that would be due under the policy. This is clear not only from her language, but from her own testimony upon the trial that she did not know until after Alice's death that she had represented herself as a widow in her application. And what was in her mind is the just measure of what was in the mind of the clerk in replying to her inquiry. There was nothing to call his attention to the statement made by her in her application; and it would not only be improbable in itself that he gave a thought to that matter, but he testified that he had no recollection of any conversation about it. The fact that the clerk took down the papers pertaining to the policy and with them the application, cannot seriously affect the case, as there was nothing to call his attention to the application, much less to this particular point in it. That this is a correct view of the facts is made evident by the remarks of the judge in his charge. He said to the jury:—"The plaintiff claims in substance that she went there at this time to ascertain the effect the fact that the husband of this woman was living would have upon her getting this insurance in full, or whether the husband could make any trouble about it; that Mr. Preston brought out some papers, and she thinks this application was among them, and that, on her putting the

question to him, he answered that he thought it would make no difference whether the husband was living or not, that he could claim nothing under the policy and could make them no trouble."

It is to be borne in mind that the burden of proof is upon the party trying to establish the waiver, and that the plaintiff herself, upon whose sole testimony her case rests, does not pretend that she had a thought of inquiring as to the effect upon the policy of Alice's representation that she was a widow, nor that the subject was in any way referred to as having any relation to her application.

My brethren, recognizing this difficulty, do not rely upon the existence of actual knowledge of the state of the application on the part of the company, but upon an inference which in their view the law makes or requires, that all that is contained in the numberless policies issued by the company is always within its knowledge. We cannot accede to this view. The knowledge must be actual, not merely theoretical. It must be practical knowledge, and must enter as such into all the conduct of the company that is to be affected by it. Yet, when we look at it as a practical matter, how can the officials of the company carry these innumerable and endless details in their minds? Could the owner of a thousand mortgages in New York carry them all in his mind, so that if he was called on to witness a deed he could at once notice that it was of property upon which he held a mortgage? And if he could not remember his thousand mortgages can we expect an insurance company to remember the details of its fifty thousand policies? It will not do to say that the company has a duty here. It clearly has none. It can always refer to the papers on its shelves where knowledge becomes necessary, and it would be a superhuman exertion, utterly uncalled for, to attempt to hold these multitudinous matters in mind. The law, in my opinion, does not require and cannot expect such an achievement.

If the conduct of the defendants in receiving the later assessments is to be regarded as a waiver of their right to

take advantage of the misstatement of the application, it is a waiver upon imputed and not on actual knowledge, and it seems to me makes necessary the substitution of a new definition of waiver for the old and familiar one.

The matter misstated in the application is one of little or no importance, and it is not creditable to the defendants to set it up. But the parties themselves made it a warranty and its unimportance becomes therefore a matter that cannot legally affect the result. I think there was error in the judgment, and that it should be reversed and a new trial granted.

In this opinion BEARDSLEY, J., concurred.