Merrimack,
Jan. 10, 1903.

### MECHANICKS NATIONAL BANK *v.* COMINS *& a.*

A policy of insurance upon the life of the manager of a corporation, pro-
cured by one who furnishes funds to carry on the business, is not void as
matter of law for want of insurable interest.

A policy of life insurance, valid in its inception, is assignable to one having
no insurable interest in the life insured, providing the assignment is made
in good faith and not as a mere device to evade the law prohibiting wager
policies.

A provision in a life insurance policy, that any claim by an assignee shall be
subject to satisfactory proof of interest in the life of the insured, is in-
tended for the protection of the company, is waived by a formal admission
of liability and payment of money into court, and is not available to one
who asserts a claim to the proceeds of the policy adversely to an assignee
thereof.

The admission of incompetent evidence is not reversible error if its only
tendency is to prove that which follows as matter of law from facts indis-
putably shown.

BILL IN EQUITY, praying that the Connecticut Mutual Life
Insurance Company be ordered to pay to the plaintiffs the pro-
ceeds of a policy of insurance upon the life of George T. Comins,
father of Edward, and that the latter be restrained from setting
up a claim to the same.   The company in its answer admitted
liability upon the policy to some person, and paid the money into

court. Edward alleged that the fund belonged to him. Trial by the court, and decree that the fund be paid to the plaintiffs. Transferred from the October term, 1901, of the superior court by *Peaslee*, J.

Prior to May 11, 1892, the George T. Comins Company (of which Edward was treasurer, George was manager, and in which both were stockholders) was indebted to the plaintiffs upon promissory notes for $26,160.74. On that day Edward assigned to the plaintiffs a policy taken out in the Connecticut Mutual Life Insuranc Company by George upon his own life in the sum of $10,000, payable to Edward if he survived his father. George joined in the assignment. The policy was assigned as security for the indebtedness upon the notes above mentioned, and the plaintiffs had no insurable interest in George's life other than that to be found from the facts herein reported. Neither George nor Edward was personally indebted to the plaintiffs. George died August 1, 1898, when there was due upon the policy $1,426.45.

The policy contained the following provision: "No assignment of this policy shall be valid unless made in writing and a duplicate or certified copy thereof be filed at the office of said company, and any claim against this company, arising under this policy, made by an assignee or creditor, shall be subject to satisfactory proof of interest in the life of the insured, in due form, and to any breach of the conditions of this contract by any of the parties hereto, whether such breach exist prior or subsequent to any such assignment; and such proof of interest shall be a condition precedent to any right of action on this contract by or on behalf of such assignee; and this company shall in no case be responsible for the validity of any assignment."

December 1, 1892, the notes being overdue, the Comins Company gave the plaintiffs five new notes for the same aggregate amount, payable at different times, and the old notes were surrendered. This transaction was not a payment of the old obligations, but a substitution therefor of the new ones. Edward signed the new notes as treasurer, and at the time of the transaction he entered on the Comins Company's journal a list of the old and new notes, together with the following memorandum: "Certain small notes of different dates consolidated by making larger notes of one date. Aggregate the same." In 1893, the premium upon the policy in suit was paid by a check of the Comins Company, and an entry that the policy was held by the bank was made by Edward upon the counterfoil. Edward made no demand for the policy when the new notes were given, nor until after George's death. Subject to exception, the court found that Edward was a party to the transaction of December 1, 1892.

In November, 1894, the Comins Company owed the plaintiffs about $92,000, including the overdue sum of $26,160.74. Having obtained title to all the property of the Comins Company by foreclosure and assignment, the plaintiffs transferred the same to the Beecher's Falls Company and received therefor $92,000 of stock in that corporation. Edward contended that this transfer was made with the understanding that it satisfied the debt of the Comins Company to the plaintiffs, and that the policy held as collateral security was released by the transaction, while the plaintiffs claimed that the stock was taken with the understanding that the earnings of the Beecher's Falls Company should be applied in reduction of the indebtedness of the Comins Company. The plaintiffs' cashier testified that the bank had received nothing from the Beecher's Falls Company; and while it did not appear that the notes of the Comins Company would not ultimately be paid in full from the profits of the Beecher's Falls Company, there was no evidence tending to show a reasonable likelihood of such result. The court found that the contention of the plaintiffs as to the purpose of the transfer was true.

As part of the process of transferring title to the Beecher's Falls Company, the plaintiffs foreclosed two mortgages—one to secure notes for $26,160.74 and the other to secure notes for $51,208.89. These facts and the amount of the proceeds of each sale ($5,000 and $18,000) were shown by the record. The plaintiffs' cashier testified generally concerning this transaction, and read the following entry made by him upon the wrapper containing the former notes: "Proceeds of sale of machinery, foreclosure under mortgage, $5,000, Nov. 5, 1894, to be endorsed on the within notes." He also read the following entry made on the wrapper containing the other notes: "Proceeds of sale of lumber and machinery at Beecher's Falls, Vt., at foreclosure under mortgage dated Aug. 2, 1893. Proceeds of sale, $18,000, to be endorsed on the within notes. Sale Dec. 18, 1894." Both entries were read subject to exception. The defendant Comins also excepted to the court's refusal to order a decree in his favor and to that entered for the plaintiffs.

*Streeter & Hollis,* for the plaintiffs.

*George M. Fletcher* and *Sargent, Niles & Morrill,* for the defendants.

REMICK, J. The fundamental contention of the defendant is that the assignment was against public policy and void, because the plaintiffs to whom it was made had no insurable interest in the life of George T. Comins, the subject of the policy assigned.

It is indeed firmly established that insurance procured by one person upon the life of another, the former having no insurable interest in the latter, is void as a wager contract, against public policy, which condemns gambling speculations upon human life. And the defendant contends that a policy can no more be assigned than originally issued to a person having no insurable interest. To this contention the plaintiffs reply: (1) That they had an insurable interest in the life of George T. Comins at the date of the assignment by reason of being a heavy creditor of the George T. Comins Company, of which George T. Comins was the manager; (2) that the policy having been originally issued to George T. Comins under such circumstances as to constitute it a good and valid contract of insurance as against the world, its subsequent assignment to them in the regular course of business was valid, whether they had an insurable interest in the life of George or not.

1. Did the plaintiffs have an insurable interest?

"It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies. . . . But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured." *Warnock* v. *Davis*, 104 U. S. 775, 779; *Adams* v. *Reed*, 38 S. W. Rep. 420, 421. "It may be said generally that any reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life." *Connecticut etc. Ins. Co.* v. *Schaefer*, 94 U. S. 457, 460. "It is not necessary . . . that the one for whose benefit the life of another is insured should be a creditor of that other. It is enough that in the ordinary course of events loss and disadvantage will naturally and probably arise to the party in whose favor the policy is written, from the death of the person whose life is insured." *Hoyt* v. *Insurance Co.*, 3 Bos. 440, 446; *Kentucky Ins. Co.* v. *Hamilton*, 63 Fed. Rep. 93. "The interest need not be such as to constitute the basis of any direct claim in favor of the plaintiff upon the party whose life is insured; it is sufficient if an indirect advantage may result to the plaintiff from his life." *Trenton etc. Ins. Co.* v. *Johnson*, 24 N. J. Law 576, 586. The tendency of the American decisions "is to hold, that wherever there is any well founded expectation of or claim to any advantage to be derived from the continuance of a life, there is an insurable interest in the life, though there may be no claim upon the person whose life is insured that can be recognized in law or in equity." Bliss Life Ins., ss. 21–31; May Ins., ss. 102–111. "A

person has an insurable interest in the life of another when there is a reasonable probability that he will gain by the latter's remaining alive, or lose by his death." 3 Kent (14th ed.) 566, note. The result of a recent review of the American cases is thus stated: " An insurable interest which will take an insurance policy out of the class of wager policies is such an interest arising from ties of blood or other relations as will justify a reasonable expectation of advantage or benefit from a continuance of the life of the assured. This rule, it would appear, does not dispense entirely with a pecuniary interest, but merely permits that interest to consist of a mere expectation of pecuniary benefit, as distinguished from the requirement of the other rule, that the interest must amount to a claim recognizable or enforceable in law." 54 L. R. A. 234. In short, " the essential thing is, that the policy shall be obtained in good faith and not for the purpose of speculating upon the hazards of a life." *Connecticut etc. Ins. Co.* v. *Schaefer*, 94 U. S. 457, 460; *Kentucky Ins. Co.* v. *Hamilton*, 63 Fed. Rep. 93, 101; *Loomis* v. *Insurance Co.*, 6 Gray 396.

If, as the plaintiffs concede, there is no case in point with the one at bar, the foregoing quotations from so many different sources of the highest authority leave no doubt as to the general principle governing it. In accordance with this principle, it is held that a partner has an insurable interest in the life of his copartner, upon whose coöperation he relies for the success of the business. *Connecticut etc. Ins. Co.* v. *Luchs*, 108 U. S. 498; *Morrell* v. *Insurance Co.*, 10 Cush. 282; *Valton* v. *Assurance Co.*, 20 N. Y. 32; *Powell* v. *Dewey*, 123 N. C. 103; 18 Cent. L. J. 347. So when one furnishes the capital and outfit for a mining expedition, it is held that he has an insurable interest in the life of him to whom he commits the management and success of the enterprise. It is hardly necessary to say that the success of a corporate enterprise may be so interwoven with the personality of its manager that its stock is taken, and money is loaned to carry it on, as much in reliance upon that personality as upon the intrinsic merit of the enterprise; and no good reason appears why a stockholder or creditor, the value of whose investment may be reasonably said to depend upon the life or health of the man at the helm, should not have an insurable interest in his life, the same as one who invests money in a partnership, relying upon the skill or experience of his copartner, has an insurable interest in the life of the latter, or one who equips a mining expedition has an insurable interest in the life of him to whom its management is committed. The creditor or stockholder under such circumstances would seem to have that " reasonable expectation of pecuniary benefit or profit from the continuance of another's life,"

which is held sufficient to constitute an insurable interest. In such case "the essential thing . . . that the policy should be obtained in good faith and not for the purpose of speculating upon the hazards of life," would appear to be present. In this view, we are not prepared to say as matter of law (*Wainewright* v. *Bland*, 1 Moo. & R. 481; *Swick* v. *Insurance Co.*, 2 Dill. 160; *Langdon* v. *Insurance Co.*, 14 Fed. Rep. 272, 274, 275; *Steinback* v. *Diepenbrock*, 158 N. Y. 24, 31, 32) that the plaintiffs, who were furnishing the funds to carry on the business of the George T. Comins Company, had no insurable interest in the life of George T. Comins, the manager and apparently the originating and directing personality in the enterprise.

2. But assuming that the plaintiffs had no such insurable interest in George T. Comins as would entitle them to take out a policy on his life, it does not follow that a policy previously taken out by George T. Comins upon his own life, with no objectionable purpose, but under the full sanction of the law, could not afterward be assigned by him to the plaintiffs, with the consent of the beneficiary, for a sufficient consideration and *bona fide* object.

In Elliot on Insurance (1902), the latest treatise upon the subject, the state of the law is thus declared (*s.* 62): "The question whether a policy valid at its inception may afterward, before the death of the insured, be assigned to one who has no insurable interest in the life of the insured, has been much discussed, and the authorities are in hopeless conflict." "The tendency in business life has been to liberalize the rules governing life insurance and thus to broaden its scope. It was found desirable that life insurance policies should pass freely by transfer and assignment; and so long as this was with the consent of the parties, it was felt that the objections on the ground of public policy were largely illusory. Thus a more liberal rule has been adopted in many states, where it is held that a policy supported by an interest in its inception is a mere chose in action, which may be assigned to a person who has no insurable interest in the life. Such assignment does not create a new contract, but merely continues the old contract in force. A person may thus insure his own life, and either name or assign the policy to whomsoever he chooses, without reference to the interest of such beneficiary in his life. The rule that the assignee of a valid policy need not have an insurable interest in the life prevails in California, Colorado, Georgia, Illinois, Indiana, Maryland, Massachusetts, Mississippi, New York, Ohio, Rhode Island, Vermont, Wisconsin, South Carolina, and in England and Canada. The doctrine seems to be supported by the weight of authority, but it must be noted that, under either rule, the essential fact is that the transaction must be *bona fide*, and not a mere

cover for a wagering or speculative insurance, or a device to evade the law. In fact, many· of the cases which hold an assignment without· interest void will, upon close examination, be found to rest upon the fact that the transaction in question was merely colorable, and an attempt to obtain speculative insurance." *Ib.*, *s.* 63. " There seems to be a clear distinction between cases in which the policy is procured by the insured *bona fide* of his own motion, and cases in which it is procured by another. It is a very different thing to allow a man to create voluntarily an interest in his termination, and to allow some one else to do it ·at their will. The true line is in the activity and responsibility of the assured, and not the interest of the person entitled to the funds. It is well established that a man may take out a policy on his own life, payable to any person he pleases; and it is drawing a distinction without a difference to hold that he cannot take out a policy and afterward transfer its benefits." May Ins. (4th ed.), *s.* 398A.

" It is one thing to say that a man may take insurance upon the life of another for no purpose except as a speculation or bet on his chance of life and may repeat the act *ad libitum*, and quite another thing to say that he may purchase the policy as a matter of business after it has once been duly issued under the sanction of the law, and is therefore an existing chose in action or right of property, which its owner may have the best of reasons for wishing to dispose of. There is in such a purchase, in our opinion, no immorality and no imminent peril to human life." *Clark* v. *Allen*, 11 R. I. 439. " It is said that if the payée of a policy be allowed to assign it, a safe and convenient method is .provided by which a wagering contract can be safely made. The insured, instead of taking out a policy payable to a person having no insurable interest in his life, can take it out to himself and at once assign it to such person. But such an attempt would not prove successful, for a policy issued and assigned under such circumstances would be none the less a wagering policy because of the form of it. The intention of the parties procuring the policy would determine its character, which the courts would unhesitatingly declare in accordance with the facts, reading the policy and assignment together, as forming part of one transaction. . . . The point of actual separation between the cases asserting the assignability and those asserting the non-assignability of policies of insurance, to persons not interested in the continuance of the life of the assured, seems to be that those asserting non-assignability proceed on the assumption that the question is one of law, and that if a policy is not assignable in one case, it cannot be in any case; while in the other line of cases the underlying principle is that all valid contracts are assignable, but that contracts are not neces-

sarily valid and free from the taint of gambling because upon their face they appear to be regularly and properly issued. In order to ascertain the truth, all the facts and circumstances may be proved; and if it then appears that the parties intended by the contract to enable a third and uninterested party to speculate upon the life of another, the court will declare such contracts invalid, not because of the assignment, but in spite of it." *Steinback* v. *Diepenbrock*, 158 N. Y. 24, 31, 32; *Swick* v. *Insurance Co.*, 2 Dill. 160; *Langdon* v. *Insurance Co.*, 14 Fed. Rep. 272; *Wainewright* v. *Bland*, 1 Moo. & R. 481. See, also, notes 57 Am. Dec. 103, 52 Am. Rep. 143, 58 Am. Rep. 855, 16 Am. St. Rep. 906, and 17 Am. Law Reg. 86.

We think both reason and authority sustain the conclusion that a life policy of insurance, valid in its inception, may be assigned to one having no insurable interest in the life insured, if the assignment is *bona fide* and not a device to evade the law against wager policies. *Fairchild* v. *Association*, 51 Vt. 613; *Mutual Life Ins. Co.* v. *Allen*, 138 Mass. 24; *Clark* v. *Allen*, 11 R. I. 439; *Fitzpatrick* v. *Insurance Co.*, 56 Conn. 116, 132, 133; *Steinback* v. *Diepenbrock*, 158 N. Y. 24, 29, 30, 31, 32; *Rittler* v. *Smith*, 70 Md. 261, 265–269; *Crosswell* v. *Association*, 51 S. C. 103, 105, 109; *Bursinger* v. *Bank*, 67 Wis. 75. Authorities might be multiplied, but as they are fully collected on both sides of the question in the foregoing cases and notes, it would be useless to do so.

The defendant relies upon *Warnock* v. *Davis*, 104 U. S. 775, and *Lanouette* v. *Laplante*, 67 N. H. 118. Speaking of the former case and of the earlier case of *Cammack* v. *Lewis*, 15 Wall. 643, the supreme court of Massachusetts, in *Mutual Life Ins. Co.* v. *Allen*, 138 Mass. 24, 32, said they "were both cases in which the policies were taken out by the procurement of the assignees, in order that they might be assigned to them, under such circumstances as that they will be held to be in evasion of the law prohibiting gaming policies. The remark of Mr. Justice *Field* in the latter case, that 'the assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his name,' was not necessary to the decision." The supreme court of Connecticut has also said, referring to *Warnock* v. *Davis*: "The expressions to the effect that the law permits a transfer only to a person who has an insurable interest in the life insured, were doubtlessly occasioned by the belief that the contract under consideration was a wager." *Fitzpatrick* v. *Insurance Co.*, 56 Conn. 116, 133. That they were not intended to declare that a policy valid in its inception could not under any circumstances be transferred to one having no insurable interest, would

seem clear from the later expressions of the same judge in *New York etc. Ins. Co.* v, *Armstrong*, 117 U. S. 591, 597, where he said: "A policy of life insurance, without restrictive words, is assignable by the insured for a valuable consideration equally with any other chose in action, where the assignment is not made to cover a mere speculative risk and thus evade the law against wager policies." The earlier decisions of the same tribunal are as inconsistent as this later one with the view of *Warnock* v. *Davis* contended for by the defendant. Thus, in *Connecticut etc. Ins. Co.* v. *Schaefer*, 94 U. S. 457, 462, the court said: "But supposing a fair and proper insurable interest, of whatever kind, to exist at the time of taking out the policy, and that it be taken out in good faith, the object and purpose of the rule which condemns wager policies is sufficiently attained." The head-note is: "Any person has a right to procure an insurance on his own life, and assign it to another, provided it be not done by way of cover for a wager policy." In *Ætna Life Ins. Co.* v. *France*, 94 U. S. 561, the court said: "As held by us in the case of *Connecticut Mutual Life Insurance Company* v. *Schaefer*, . . . any person has a right to procure an insurance on his own life and assign it to another, provided it be not done by way of cover for a wager policy." *Warnock* v. *Davis* is reviewed and distinguished, and the conclusion reached in the present case ably sustained, in *Fitzpatrick* v. *Insurance Co.*, 56 Conn. 116, 132, 133, *Steinback* v. *Diepenbrock*, 158 N. Y. 24, 31, 32, *Rittler* v. *Smith*, 70 Md. 261, 265, 266, 267, and *Crosswell* v. *Association*, 51 S. C. 103, 105–109.

In *Lanouette* v. *Laplante*, 67 N. H. 118, the court said: "The transaction in a legal aspect does not differ from what it would have been if he [the beneficiary] had himself procured the insurance with Mrs. Lawrence's [the subject of the insurance] assent." Thus the policy was treated as a wager contract in its inception. The case, therefore, is no more an authority than *Warnock* v. *Davis* for the proposition for which the defendants contend here, but is entirely consistent with the conclusion reached in the present case.

*American Legion of Honor* v. *Sides*, 67 N. H. 595, was not a case of assignment. The policy there in question was payable to the defendant when issued, and the premiums were paid by him. The court evidently proceeded upon the idea, as in *Lanouette* v. *Laplante* and *Warnock* v. *Davis*, that "the transaction in a legal aspect did not differ from what it would have been if the defendant had himself procured the insurance," and that it was a wager contract in its inception. The fact that the case was disposed of without comment, upon the authority of *Lanouette* v. *Laplante*,

confirms this view. Like *Warnock* v. *Davis* and *Lanouette* v. *Laplante*, it is distinguishable from the present case.

3. The provisions in the policy regarding assignment, upon which the defendant relies, were inserted for the protection of the company. The company has waived them by admitting liability and paying the money into court. They are not available to the defendant. *Knights of Honor* v. *Watson*, 64 N. H. 517; *Brown* v. *Mansur*, 64 N. H. 39.

4. But assuming the validity of the assignment, the defendant contends that, as it was made as a pledge or security for the debt of another, its legal relation was that of a surety, and that it was discharged by certain transactions between the plaintiffs and the principal debtor changing the terms of the contract, to which the policy was collateral, and the status of security, to which the defendant, in case he paid the principal indebtedness, would have been entitled to subrogation.

Of the soundness of the legal proposition, that "when a person pledges his property as security for the performance of the contract of a third party, the property stands in the position of a surety, and any change in the contract which would have discharged a surety upon the contract will discharge the property pledged as security," there would seem to be no doubt. Brandt Sur. & Guar. (2d ed.), s. 34; *Rowan* v. *Company*, 33 Conn. 1; *Price* v. *Bank*, 124 Ill. 317. The trouble is not with the law of the defendant's position in this respect, but with the facts. As we understand the finding of the court, the defendant assented to the transaction of December 1, 1892, and that the policy should remain with the plaintiffs as security for the notes then substituted. The facts reported are quite sufficient to warrant this finding. Having so assented, it is hardly necessary to say that the defendant is now estopped to claim a discharge on account of that transaction. *Crosby* v. *Wyatt*, 10 N. H. 318, 324; *Watriss* v. *Pierce*, 32 N. H. 560; *Hutchinson* v. *Wright*, 61 N. H. 108; Brandt Sur. & Guar. (2d ed.), s. 342. Furthermore, according to the case as amended, the transaction of 1892 involved no extension.

As we understand the finding of the court, the transaction of November, 1894, was neither a payment nor an extension of the principal indebtedness, nor a change in the status of any security held by the plaintiffs to which the defendant would have been entitled to be subrogated had he paid the principal debt, except such change as resulted from the *bona fide* foreclosure of the plaintiffs' mortgages and due application of the proceeds in reduction of the primary obligations. No other interpretation would be consistent with the decree. If we have misinterpreted the finding of the court, and the foreclosure was in fact only a matter of form,

and the real transaction was a transfer of the property of the Comins Company to the Beecher's Falls Company, pursuant to a binding agreement between the plaintiffs and the Comins Company that the plaintiffs would thereafter look for their pay to the Beecher's Falls Company and not to the Comins Company, then there would appear to have been such a modification of the terms of the contract, for the performance of which the policy was pledged, as to effect a discharge of the policy as security.

5. The mortgage sale "and the amount of the proceeds of each sale ($5,000 and $18,000) were shown by the record" and, upon such showing, were found as facts. The sale and the proceeds thereof already appearing as "facts" from the record, and the application of the proceeds to the mortgage indebtedness following as matter of law, the admission of the indorsement upon the wrapper, merely evidencing the same facts, was not reversible error, especially in the absence of anything in the case showing or indicating a claim that in these respects the facts were otherwise than as shown by the record. *Wiggin* v. *Damrell*, 4 N. H. 69; *Foye* v. *Leighton*, 24 N. H. 29, 37, 38; *Waite* v. *Association*, 66 N. H. 581.

*Exceptions overruled.*

CHASE and WALKER, JJ., did not sit: the others concurred.