Basye v. Adams, &c.

CASE 58—INSURANCE—JUNE 16, 1883.

## Basye v. Adams, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. One of the objects of the National Mutual Benefit Association is to relieve the necessities of sick and disabled members, or to confer charities, in the discretion of the directors, and for that purpose a permanent fund is provided by their charter.

2. The other is to pay to the *legal heirs or beneficiary* of a deceased member such sum as may be realized from an assessment upon its members, and the fund, according to the charter, must be paid to the legal heirs or beneficiary of such deceased member.

3. Throckmorton (the insured) could not, under the charter, sell and assign his policy of insurance so as to divert the fund from his legal heirs and beneficiary.

4. It is essential to the validity of a policy of insurance, obtained by one person for his benefit upon the life of another, that the party so obtaining shall have an insurable interest in the life of the insured.

5. The assignment of a policy of insurance to a party not having an insurable interest is as objectionable as taking out a policy in his name.

Basye v. Adams, &c.

JAMES S. PIRTLE AND GEO. B. EASTIN FOR APPELLANT.

1. If, by the charter of the National Mutual Benefit Association, the beneficiaries are not confined to any particular class, and the assured himself may have an interest which the charter does not expressly prohibit him from assigning, then he has the power to appoint, by assignment, some one else to receive the benefits of the policy.

2. The beneficiaries under the charter are not fixed or certain.

3. There is nothing that confines the benefits to the members' "family," and it is not competent to so limit the beneficiaries by by-laws.

4. *Section* 8 of the charter does not prohibit the voluntary assignment of his policy by a member.

5. By having this policy payable to his "estate," Throckmorton meant to exclude, and did exclude, his legal heirs, and thereby meant to retain, and did retain, complete control over the policy. (98 Mass., 381; Bliss on Life Insurance, secs. 26, 30; Phillips on Insurance, vol. 1, page 186; 20 New York, 32; 27 New York, 282; 15 Com. B., 365; 4 Otto, 462; 4 Otto, 561; 1 Kay and J. Ch., 223; 2 Casey, 189; Hine and Nicholas' Law of Assignments of Life Policies, pp. 73, *et seq.;* 101 Mass., 565; 85 New York, 593; 11 Rhode Island, 439; 56 Iowa, 625; 56 Iowa, 620; 95 Ills., 309.)

RANDOLPH H. BLAIN FOR APPELLEE.

1. The certificate of membership held by Throckmorton in the National Mutual Benefit Association was, by its terms, unassignable.

2. It was unassignable by the charter of the association.

3. The assignment to Basye, who could have no interest in his life, was a "wager contract," and no recovery should be had upon it.

4. If it was not void in whole, it was void as to all save the value of the interest of the assignee in the life insured.

5. The assignment is against public policy and void. (11 Barb., 140; 2 Litt., 167, Foree, adm'r, v. Thomasson; 13 B., 493, Masonic Mut. Ben. Association v. Miller; Duvall v. Goodson, 79 Ky., 224; 27 N. Y., 163; 45 N. Y., 461; 41 Black (Ind.), 121; 18 Kans., 93; Robinson v. Duvall, 79 Ky., 84; 94 U. S., 462, Conn. Life Ins. Company v. Schaefer; 23 N. Y., 518; 15 Wal., 643; 398, 108, 110-'7-'4, May on Insurance; 8 Chi. Le., note 38, 80 Ill., 36; 101 Mass., 565; 104 U. S., 775; M. J. Co., 66 Mo., 70; 11 R. I., 439; 13 N. Y., 33; 20 N. Y., 32.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

September 13, 1878, the National Mutual Benefit Association, in consideration of the payment by him of six dollars membership fee, two dollars annual fee, and his agreement

to pay the further sum of two dollars on each anniversary of his membership, and three dollars within thirty days after the death of any member of the association, issued and delivered to J. R. Throckmorton a certificate of life membership, in which it was agreed by the association to pay to *the estate* of Throckmorton, within sixty days after proof of his death, such sum as might be realized from an assessment on all surviving members, as provided in the sixth section of the charter.

March 3, 1881, in consideration of five hundred dollars, fifty of which was in discharge of an existing debt, and the balance cash paid, Throckmorton, in writing annexed to it, assigned to appellant Basye the certificate, "and all the benefit and advantage to be derived therefrom." And thereafter he paid all dues and assessments which Throckmorton had, in consideration of the certificate and as a life-member of the association, agreed to pay, amounting to sixty-three dollars, and also expended the sum of fifty-five . dollars in procuring formal proof of the death of Throckmorton.

The amount found due and payable by the association, after the death of Throckmorton, which occurred in July, 1881, is the sum of four thousand dollars; and whether that sum, which was deposited by the association, subject to the disposal of the court, should be paid to the administrator of his estate who is the plaintiff in the action, or to appellees, his legal heirs, or to appellant as assignee of the policy, was the question presented and decided by the lower court.

The chancellor rendered judgment for the repayment to appellant Basye out of the fund in court the sum of five hundred dollars, the consideration paid for the assignment of the policy, and the other two sums advanced and paid

Basye v. Adams, &c.

by him subsequently, and to appellees, legal heirs of deceased, the balance of the amount. And of that judgment both Basye and the heirs complain, each party claiming to be entitled to the whole amount.

As the administrator has not appealed, and it does not appear from the record that there are any creditors of the estate of deceased, unless appellant may be regarded as one, the issue to be here determined as to the ownership of the fund is between Basye and the heirs.

The National Mutual Benefit Association was, by an act of the general assembly, approved April 6, 1878, created a body-corporate, with the right to acquire and hold real and personal property, not exceeding one hundred thousand dollars in value; to make contracts, sue and be sued, and to transact all business for its corporate purposes; and power was also given to it to confer charities, as provided in the charter, or as the president and directors may determine.

By section 2 of the charter it is provided that the persons named therein may constitute a board to do business, and organize and receive as members all clergymen, physicians, lawyers, their wives, and such persons as may be recommended by a member of either of these professions, of good standing, sound health and constitution, and who shall pass a satisfactory medical examination, and be between the ages of eighteen and sixty-five years.

Section 3 provides that each person, on application for membership, shall pay into the treasury of the association certain fees, and "upon the payment of these sums, each member shall receive a life-membership certificate, . . . . . which shall express on its face the obligations of such member, and the benefits to accrue to *the legal heirs* or *beneficiary* of the same in the event of death."

Section 5 is as follows: "The membership and annual fees paid into the treasury by each member, together with assessments, after paying *the legal heirs or beneficiary* of a deceased member and the expenses of the association, shall form a permanent fund, which may, at the discretion of the directors, be appropriated to relieving the necessities of sick or disabled members, by granting a weekly sum, not to exceed ten dollars a week, for a time not longer than twenty weeks, consecutively, to be paid to such sick or disabled members, or in such charities as they may direct."

Section 6 provides that "upon the death of a member, each surviving member shall pay into the treasury the mortuary fee stipulated in the certificate of membership, which sum shall constitute a fund, to be paid within sixty days from the date of proof of death, *to the legal heirs or beneficiary* of the deceased member, less twenty per centum to be deducted for permanent fund and expenses."

Section 7 provides that any member failing to pay his assessment within thirty days, as provided in section 6, shall forfeit his membership and all benefits arising therefrom, &c.

Section 8 is as follows: "No part of the interest of any member of the association shall be subject to any debt, liability, or legal or equitable process against them, or which may alienate the benefits from the legal heirs."

The first question to be considered is, whether the assignment of the certificate to appellant is valid for any purpose.

It will be observed that the association was incorporated for two distinct objects, and that provision was made in the charter for raising two distinct funds. One of the objects is to relieve the necessities of sick and disabled members, or to confer charities, in the discretion of the directors, and for

Basye v. Adams, &c.

that purpose a permanent fund is provided for by the char-
ter.   The other object is to pay the *legal heirs or beneficiary*
of a deceased member such sum as may be realized from an
assessment on all surviving members, less twenty per cent.,
to be deducted for the permanent fund and expenses.

It will also be observed that it requires the consent of the
association to become a member thereof, only certain classes
of persons, or those possessing prescribed qualifications, be-
ing admissible, and that each applicant for membership is
required to pay certain fixed fees before being admitted as a
member.

It is therefore clear that the assignment of the certificate
to appellant did not have the effect of investing him with the
personal privileges of a life-member of the association, or
giving him any interest in the permanent fund which, ac-
cording to a fair construction of the charter, is to be used
for the benefit only of members of the association.   It thus
follows, if the assignment was valid and effectual for the pur-
pose it was intended to accomplish, that while appellant was
bound to pay all the assessments and fees required of a
member to prevent forfeiture of the policy, and was enti-
tled to the fund payable at the death of Throckmorton, the
latter still retained all the other rights and privileges of life-
membership which appellant did not nor could possess
merely in virtue of the assignment to him.

The fund to be paid upon the death of a member of the
association must, according to the charter, be paid to the
legal heirs or beneficiary of such deceased member.

It is not pretended that appellant is a legal heir, nor, in
our opinion, is he a beneficiary in the sense that, keeping in
view the nature and objects of the association, we are re-
quired to use that term.   For whatever right or interest he

acquired, if any, he took by virtue of the contract of assignment and as a purchaser for value, and not as a designated beneficiary.

At the time Throckmorton became a member of the association, he designated his "estate" as the beneficiary, and, by the terms of the certificate, which embodies the contract between him and the association, the latter agreed to pay to his "estate," and not otherwise, the amount to become due at his death. Whether he could have, by will or otherwise, subsequently designated and bound the association to pay at his death the fund to another person, or for another object, it is not necessary to now decide. That he could not, under the charter, sell and assign the policy so as to divert the fund from both his legal heirs and beneficiary, we must conclude; and in such conclusion we are fortified by the farther fact that no provision is made, or authority given, in the charter, which must govern, for the sale and assignment of it, or for investing a purchaser and assignee with any of the privileges as a member, or interest in the fund payable at the death of the assignor.

 But there is another and graver reason why the attempted sale and assignment should not be upheld.

The precise question before us has not heretofore been presented to or decided by this court. Nor does there exist in this state any statutory provision on the subject. But, in our opinion, adhering to well-known and recognized principles, there need be but little difficulty in determining it. Public policy requires that in all cases it should be essential to the validity of a policy of insurance, obtained by one person for his own benefit upon the life of another, that the party so obtaining the policy should have an insurable interest in the life of that other.

"It is not easy to define with precision what will, in all cases, constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should always be capable of pecuniary estimation; for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and a wife in the life of her husband. . . . In all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned as being against public policy. The assignment of a policy to a party not having an insurable interest is as abjectionable as the taking out of a policy in his name." (Warnock v. Davis, 104 U. S., 462; Cammack v. Lewis, 15 Wal., 643; Franklin Life Ins. Co. v. Hazzard, 41 Black (Ind.), 121; Missouri Valley Life Ins. Co. v. Sturges, 18 Kansas, 93; May on Insurance, 398.)

Counsel for appellant have cited authorities sustaining the opposite doctrine as respects the assignment of policies of life insurance. But we are unable to see why the rule recognized by all the authorities as applicable to, and which ren-

ders invalid, because against public policy, policies of life insurance taken for the benefit of a party having no insurable interest in the life of the person in whose name it is issued, should not be also applied to an assignment of a policy where the assignee has no such insurable interest.

In this case, while Throckmorton lived, not only was the payment of the amount due at his death postponed, but appellant was compelled, in order to prevent a forfeiture of the policy to continue to pay the fees and assessments stipulated in the contract of insurance to be paid. He therefore had no insurable interest in the continuance of the life of the assured, but was directly interested in its early termination, when he would become entitled to an amount greatly disproportioned to the investment made by him.

It is not a sufficient answer to say that the policy was valid when issued; for, if a person "may purchase a policy on the life of another, in whose life he has no interest, as a mere speculation, the door is open to the same practice of gambling, and the same temptation is held out to the purchaser of the policy to bring about the event insured against as if the policy had been issued directly. It is, in fact, an attempt to do indirectly what the law will not permit to be done directly."

In our opinion, therefore, the assignment to appellant was void as against public policy.

Upon the cross-appeal appellees seek a reversal of so much of the judgment as gives to appellant the amount paid by him as consideration for the policy assigned, and the two other sums subsequently paid by him.

These amounts were paid by appellant apparently in good faith, and are just demands against the estate of the deceased.

He designated his "estate" as his beneficiary, by which he clearly meant that the amount payable at his death should become assets of his estate, to be paid over to his personal representative, and by him disposed of according to the laws providing for the distribution of estates of deceased persons, and payment of debts against them.

We perceive no reason why, under the charter, a member of the association may not make such provision for his creditors, his widow, or other person, as well as, or even excluding, his heirs-at-law; for, clearly, by the terms of the charter, the right is given to a member to designate any object or person as his beneficiary, excluding any number, or all his heirs-at-law, at his will.

In this case, the record showing no other demands against the estate of the deceased besides the amounts adjudged to be paid to appellant, the chancellor did not err in directing the amounts to be paid to him.

The judgment on both the appeal and cross-appeal must be affirmed.