ERWIN STEINBACK, Respondent, *v.* LOUISE DIEPENBROCK, as
Executrix of ALOIS DIEPENBROCK, Deceased, Appellant, and
WILLIAM ERDTMANN, Respondent.

1. LIFE INSURANCE — ASSIGNMENT OF POLICY TO ONE HAVING NO
INSURABLE INTEREST. It is the doctrine of this state, that a policy of
life insurance taken out by the insured himself or by another having an
insurable interest in his life, in good faith and not for the mere purpose
of assignment, may be lawfully assigned to one having no insurable
interest in the life of the insured; and that the assignee, when the assign-
ment is absolute and general, will be entitled to the entire proceeds of the
policy.

2. PHYSICAL CONDITION OF INSURED ASSIGNOR. The fact that the
insured's condition of health has failed does not deprive him of the right
to realize on his policy by its assignment.

*Steinback* v. *Diepenbrock,* 1 App. Div. 417, affirmed.

(Argued December 12, 1898; decided January 10, 1899.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered
February 13, 1896, affirming a judgment of the late Court of
Common Pleas for the city and county of New York in favor
of plaintiff and the defendant Erdtmann, entered upon a
decision of the court on trial at Special Term.

This action was brought to recover the proceeds of a certain
policy of insurance for $10,000, issued on the life of Alois Die-
penbrock, appellant's testator, by the Equitable Life Assurance
Society of the United States. The amount due thereon was
claimed, on the one hand, by the plaintiff as assignee, and, on
the other hand, by the defendant Louise Diepenbrock, as
executrix of the estate of Alois Diepenbrock, deceased. The
plaintiff brought suit against the insurance company to recover
the amount due upon the policy. The company, admitting
its liability to some one, paid the money into court and pro-
cured the defendant Louise Diepenbrock, as executrix, to be
substituted as defendant together with William Erdtmann,
the original assignee of the policy, who had assigned it to the
plaintiff. Further facts are stated in the opinion.

*A. Edward Woodruff, William Phlippeau* and *Max Meyer* for appellant. The assignment from Alois Diepenbrock to the defendant Erdtmann cannot be sustained unless it is affirmatively shown that it was a fair and *bona fide* transaction and free from all suspicious circumstances. (*In re Smith,* 95 N. Y. 516; *Cowee* v. *Cornell,* 75 N. Y. 91; *Nesbit* v. *Lockman,* 34 N. Y. 167; *Green* v. *Roworth,* 113 N. Y. 462; *Barnard* v. *Gantz,* 140 N. Y. 249; *E. S. Ins. Co.* v. *A. C. Ins. Co.,* 138 N. Y. 446; *Sears* v. *Shafer,* 6 N. Y. 268; *Gardner* v. *Ogden,* 22 N. Y. 327; *Conkey* v. *Bond,* 36 N. Y. 427; *Bain* v. *Brown,* 56 N. Y. 285.) The plaintiff can have no better title to said policy than the defendant Erdtmann, and is subject to all the equities existing at the time when Erdtmann received the assignment of the policy from Diepenbrock, unless he affirmatively shows that he is a purchaser for value in good faith and without notice. (*Bush* v. *Lathrop,* 22 N. Y. 535; *Grant* v. *Walsh,* 145 N. Y. 502; *Ballard* v. *Burgett,* 40 N. Y. 314; *Simpson* v. *Del Hoyo,* 94 N. Y. 189; *Fairbanks* v. *Sargent,* 117 N. Y. 320; 104 N. Y. 108; *Austin* v. *Dye,* 46 N. Y. 500; *Seymour* v. *McKinstry,* 106 N. Y. 230; *Barry* v. *E. L. A. Soc.,* 59 N. Y. 587; *Loomis* v. *Ruck,* 56 N. Y. 462; *Valentine* v. *Lunt,* 115 N. Y. 505.) The court erred in rejecting the testimony offered by the executrix calling for the conversation the witness had with the defendant Erdtmann in reference to the insurance policy in suit. (*Simpson* v. *Del Hoyo,* 94 N. Y. 189; *Bush* v. *Lathrop,* 22 N. Y. 535; *Davies* v. *Austen,* 1 Ves. 247; *Schafer* v. *Reilly,* 50 N. Y. 61; *Greene* v. *Warnick,* 64 N. Y. 220; *Westbrook* v. *Gleason,* 79 N. Y. 23; *Owen* v. *Evans,* 134 N. Y. 514; *Spauling* v. *Wells,* 24 App. Div. 584; *Hill* v. *Hoole,* 116 N. Y. 304; *Briggs* v. *Langford,* 107 N. Y. 680.) The plaintiff had no insurable interest in the life of the insured and admitted upon the trial that he bought the policy as a speculation. Such a transaction should not be sanctioned by this court. (*Warnock* v. *Davis,* 104 U. S. 775; *Cannock* v. *Lewis,* 15 Wall. 643; *Ruse* v. *M. B. L. Ins. Co.,* 23 N. Y. 516; *Holmes* v. *Gilman,* 138 N. Y. 369; *F. L. Ins. Co.*

4

v. *Hazzard*, 41 Ind. 116; *Stevens* v. *Warren*, 101 Mass. 564; *C. M. Life Co.*v. *Schafer*, 94 U. S. 457; *Helmetay* v. *Miller*, 76 Ala. 183; *Ruth* v. *Katterman*, 112 Penn. St. 251; *Hoffman* v. *Hoke*, 122 Penn. St. 377.)

*James Cowden Meyers, Louis C. Raegener* and *Thomas M. Rowlette* for respondent.   There is no presumption in law that an assignment of a policy of life insurance was made as collateral to secure a loan.  (*St. John* v. *A. M. L. Ins. Co.*, 2 Duer, 419; 13 N. Y. 31; *Olmsted* v. *Keyes*, 85 N. Y. 593.) The plaintiff's title is not impeached by want of interest in the life of the defendant Diepenbrock's testator.  (*St. John* v. *A. M. L. Ins. Co.*, 13 N. Y. 31; *Valton* v. *N. F. L. A. Co.*, 20 N. Y. 32; *Olmsted* v. *Keyes*, 85 N. Y. 593; *Wright* v. *M. B. L. Assn.*, 118 N. Y. 237; *Walsh* v. *M. L. Ins. Co.*, 133 N. Y. 408; *Geoffroy* v. *Gilbert*, 5 App. Div. 98; 154 N. Y. 741.)

PARKER, Ch. J.   The counsel for the appellant in his argument insisted with great earnestness and force that the position several times asserted by this court in support of the legality of the assignment of a policy of insurance to a person having no insurable interest in the life of the insured, is a mistaken one and in conflict with the decisions of the United States Supreme Court and the court of last resort in many of the states.

*Warnock* v. *Davis* (104 U. S. 775); *Franklin* v. *Hazzard* (41 Ind. 116); *Missouri Co.* v. *Sturges* (18 Kan. 116); *Schoenfield* v. *Turner* (75 Texas, 334); *Bayse* v. *Adams* (81 Ky. 368) and *Helmetig* v. *Miller* (81 Ala. 183) furnish support for his assertion as to the rule in the United States Supreme Court and in some of the other states.   Supported by these authorities, the counsel challenged the correctness of the rule that concededly has been long acquiesced in in this state by the courts and the profession.   Indeed, Mr. Justice FIELD in his opinion in *Warnock* v. *Davis* (*supra*), stated the rule in this state to be that a valid assignment of a policy of

insurance could be made to a person without interest in the insured.    But the appellant contends that, while this may be the rule here, the decisions in other jurisdictions demonstrate that our position is wrong as a matter of sound public policy, and, therefore, the true rule should be laid down, notwithstanding that expressions inducing the belief that the above rule obtained may have been made by our courts.    It is urged that this task will not be a difficult one for the reason, as the appellant contends, that there have been no cases in this state where the question was necessarily up for decision, and, therefore, all that has been said upon that subject by this court is mere dictum.

In *St. John* v. *Am. M. L. Ins. Co.* (13 N. Y. 31) a recovery in favor of the plaintiff against an insurance company was sustained where it appeared that one Noyes had effected policies of insurance upon his own life and shortly afterwards assigned them to the plaintiff for a valuable consideration.    In the answer the defendant alleged, by way of defense, that the plaintiff was entitled to recover only the amount of money that he had advanced as a consideration of the transfer of the policy to him, and that if defendant was liable beyond such amount upon the policy, the personal representatives were interested in the excess, and, therefore, necessary parties to the suit.    And upon the close of the evidence the counsel for the defendant pressed the point that the plaintiff had no insurable interest in the life of the insured, and, therefore, was not entitled to judgment.    The court regarded the question as one necessary to be passed upon in the final disposition of the case, and after considering it, held that the policies in question were valid in their inception and that the assignment of them to the plaintiff did not affect the liability of the company, and that to entitle the assignee to a recovery it was not necessary for him to have had an insurable interest in the life of the insured.

The ·next case was *Valton* v. *N. F. L. Assur. Co.* (20 N. Y. 32) where Schumacher obtained a policy on his life for $10,000, and by his articles of copartnership agreed that the plaintiff and another partner should become the owners of the

policy and all due thereon in the event of his death before the termination of the partnership. This contingency happened, and the court held that it operated to vest absolutely the title to the policy in the plaintiff and his other partner and a recovery could be had thereon as against the defendants.

It will be observed that in the cases cited the contest was between the assignee and the company issuing the policy, and the question was not squarely presented whether, as between the assignor and the assignee, the assignee would be entitled to retain more than the sum actually invested by him, which is the rule in some jurisdictions. But it necessarily was decided that the policy was not rendered invalid by the assignment, and further that the assignee acquired thereby the right to enforce collection of the full amount of the policy from the company.

In *Olmsted* v. *Keyes* (85 N. Y. 593) the plaintiff, having obtained the proceeds of a policy of life insurance, brought an action for the purpose of ascertaining and determining the conflicting claims of various defendants to the moneys paid on the policy. It appeared that Keyes procured a policy of insurance on his life, payable to the plaintiff as trustee for his wife Huldah; Huldah died intestate a few years later; afterwards Keyes married again and thereupon the plaintiff for value assigned the policy to Keyes' second wife at his request. Keyes subsequently died intestate, leaving him surviving his widow and one child by her and several children by his first wife. It was held that during the life of the first wife the policy was her property; upon her death the title vested in her husband as survivor, and he having caused it to be assigned to his second wife, the assignment vested the title in her and she alone was entitled to the money due thereon. There was a difference of view in the court as to the disposition of the case, and the argument that led to the decision considered with care the assignability of a policy of life insurance like any other contract; in the course of the argument the court referred to and considered many authorities in England and in this country and

reached the conclusion that while an insurable interest is necessary to enable one to take out a policy of insurance on the life of another, it is not necessary that the assignee of a policy validly issued should have such an interest. After careful examination of that opinion we find it impossible to reach any other conclusion than that it was intended to put at rest whatever controversy there may have been in this state touching the assignability of a valid policy of insurance. The case at bar is the only one we know of where the rule laid down in the case last referred to has been seriously questioned, although it is true that some discussion of the principle was had in *Wright* v. *M. B. L. Assn. of A.* (118 N. Y. 237), where the defendant unsuccessfully challenged the right of the assignee to recover on the ground, among others, that the plaintiff had not an insurable interest in the life of the insured at the time of the assignment; the court in its opinion cited the case of *Olmsted* v. *Keyes* (*supra*).

The result of our further examination persuades us that what has been understood to be the rule in this state is not only in line with the authorities in most jurisdictions upon that subject, but is sound as a matter of public policy. It was formerly the rule in England that while a policy of insurance could not be assigned at law it could in equity. By the act of 1867 (30, 31 Vict. c. 144) a policy of life insurance was made assignable at law, and in some of the decisions it was said by the court that the object of the statute was to enable the assignee to sue in his own name; but it did not in any other way improve the position of the assignee, who could before that secure the money in equity. (*B. E. Ins. Co.* v. *G. W. R. Co.*, 38 L. J. Ch. 132; *In re Turcan*, L. R. [40 Ch. D.] 5.)

The rule asserted by this court has also been held to be the law in many of our sister states in a number of cases where the question has been raised either in actions brought by personal representatives of the assignor to recover the money received by the assignee on a policy, or in suits brought by the company issuing the policy for the purpose of determining whether the personal representatives or the assignee were

entitled to the proceeds, all claimants being made parties defendant. (*Mut. L. Ins. Co.* v. *Allen*, 138 Mass. 24; *Eckel* v. *Renner*, 41 Oh. St. 232; *Martin* v. *Stubbings*, 126 Ill. 387, 403; *Fitzpatrick* v. *Hartford L. & A. Ins. Co.*, 56 Conn. 116; *Clark* v. *Allen*, 11 R. I. 439; *Murphy* v. *Red*, 64 Miss. 614; *Rittler* v. *Smith*, 70 Md. 261.) These authorities are, it seems to us, well grounded in principle. They recognize not only the existence of, but the necessity for, the rule that forbids any insurance upon the life of a person, in which the person for whose benefit the insurance is made has no interest. Such a policy constitutes what is termed a wager policy, or a mere speculative contract upon the life of the insured, with a direct interest in favor of its early termination. It is, in terms, forbidden by statute in England (14 Geo. III, c. 48) and in many other jurisdictions, including this state (Laws 1892, chap. 690, § 55), and this court held in *Ruse* v. *Mutual Benefit L. Insurance Company* (23 N. Y. 516) that such insurance is void at common law, and that the English statute, in so far as it prohibits such insurance, is merely a declaratory act. But the question we are considering presupposes a valid contract of insurance, the policy being issued either for the benefit of the assured personally, or for the benefit of some one having an insurable interest in the assured at the time of the taking out of the policy. Such a policy constitutes a contract to pay a certain amount of money to the payee on the death of the assured. It is a chose in action with all the ordinary incidents belonging thereto, and as such may be assigned either as collateral or absolutely, as the payee may elect. While an insurable interest in the payee is necessary, in the first instance, to the creation of a valid contract, it is not necessary that such interest should continue. The case of a wife divorced from her husband will serve as an illustration. The policy taken out for her benefit during the existence of the married relation, is not affected by a subsequent severance of that relation through a decree of a court of competent jurisdiction by which she ceases to have an insurable interest in his life. (*Connecticut Mutual Life Ins. Co.* v. *Schaefer*, 94 U. S. 457.) The

materiality of the value of the interest has relation to the question whether the policy is taken out in good faith, and not as a gambling transaction. If it be taken out in good faith, then a sound public policy would seem to require that the payee should be permitted to treat it as he may any other chose in action and go to the best market he can find, either to sell it or borrow money on it. It would substantially confine him to such terms as the company issuing the policy should choose to make with him, if he should be limited in his choice of a purchaser to the party having an interest in the continuance of the life of the assured.

On the other hand, it is said that if the payee of a policy be allowed to assign it, a safe and convenient method is provided by which a wagering contract can be safely made. The insured, instead of taking out a policy payable to a person having no insurable interest in his life, can take it out to himself and at once assign it to such person. But such an attempt would not prove successful, for a policy issued and assigned, under such circumstances, would be none the less a wagering policy because of the form of it. The intention of the parties procuring the policy would determine its character, which the courts would unhesitatingly declare in accordance with the facts, reading the policy and the assignment together, as forming part of one transaction.

*Cammack* v. *Lewis* (15 Wall. 643) and *Warnock* v. *Davis* (104 U. S. 775) were cases where the policies were taken out in order that they might be assigned to the assignees, through their procurement, under circumstances that might well be held to be in evasion of the law prohibiting gaming policies.

In *Warnock's* case the agreement touching the procurement of the policy and the use to be made of it, including the promise to assign it, was in writing, and executed the very day the policy was applied for, and the day following the assured executed an assignment of the policy, which had in the meantime been issued in pursuance of such an agreement. The insurance company paid over the money to the assignee, and the court held that the personal representatives of the assured

were entitled to receive from the assignees all the money except the sums advanced by them under the agreement, plus the sum paid by them to the widow. In the opinion it is said that the assignment of the policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his name. That remark was clearly true as applied to the facts of that case, for the policy was taken out in pursuance of an agreement to assign it. It was, therefore, in fact a policy taken out for the benefit of parties having no insurable interest, although in form issued to the assured and by him assigned to such parties. In such case the court will always declare the fact to be as it is, without regard to the effort of the parties to hide the truth and cheat the law. But the language employed by the court, and evidently advisedly, is broad enough to cover all assignments of policies to parties not having an insurable interest, including as well those taken out in good faith and kept up as long as the financial condition of the insured permits, as those deliberately taken out for the purpose of speculation upon a life that the intended beneficiary, whether as payee in the policy or by assignment, has no interest in prolonging. The point of actual separation between the cases asserting the assignability and those asserting the non-assignability of policies of insurance to persons not interested in the continuance of the life of the assured, seems to be that those asserting non-assignability proceed on the assumption that the question is one of law, and that if a policy is not assignable in one case, it cannot be in any case; while in the other line of cases the underlying principle is that all valid contracts are assignable, but that contracts are not necessarily valid and free from the taint of gambling because upon their face they appear to be regularly and properly issued. In order to ascertain the truth all the facts and circumstances may be proved, and if it then appear that the parties intended by the contract to enable a third and uninterested party to speculate upon the life of another, the court will declare such contract invalid, not because of the assignment, but in spite of it.

*Warnock's* case and this one are very wide apart in their facts and serve very well to illustrate the necessity for the position taken by the courts of this state upon this general subject.

In December, 1887, Alois Diepenbrock took out a policy of insurance on his life in the Equitable Life Assurance Society. He paid the premiums regularly down to December, 1892, a period of about five years, at which time the surrender value of the policy was about $485. He was pressed for money and finally sold the policy to the defendant Erdtmann for $600, or something like $115 more than he would have received by the surrender of the policy to the company. He had paid a much larger sum in premiums, something over $2,000, and there seems to be no good reason why a person owning such a policy and obliged to sell it, should not be permitted to get back as much as possible of the money that he has paid out for insurance. His condition of health may have changed very materially, of which fact the company can take no advantage; for in its contract it made allowance for that possibility. There is no good reason for saying that an insured person should not have the right, whenever his necessities press him because of a failing condition of health that assures a speedy death, to realize on his policy and obtain for it something like a fair price, which may, perhaps, be almost equal to its face value.

The personal representatives of the assured contested the assignment also on the ground that it was intended as collateral, although in form a valid assignment, but the Special Term found otherwise, and the Appellate Division approved that finding, so that question is no longer open for consideration.

Other questions are presented by the appellant, but after a careful examination of them we conclude that no error was committed below that will support a reversal of the judgment.

The judgment should be affirmed, with costs.

All concur, except MARTIN, J., absent.

Judgment affirmed.