CASE 44.—ACTION BY GEORGE W. BROMLEY'S ADMINISTRATOR, AGAINST THE WASHINGTON LIFE INS. CO. TO RECOVER ON A POLICY ON THE LIFE OF DECEASED.—March 20.

## Bromley's Admr. v. Washington Life Ins. Co.

Appeal from Carroll Circuit Court.

JOHN M. LASSING, Circuit Judge.

Judgment for defendant. Plaintiff appeals. Affirmed.

1. Life Insurance—Beneficiary—Insurable Interest—Colorable Assignment—In accordance with a contract between insured and one having no insurable interest in his life, life policies were taken out payable to insured's estate, and assigned to the third person, to whom also they were delivered by the agent. All premiums were paid by the assignee from whom insured received a certain sum for the transaction. Held, That the policies were void, and not collectible by the administrator.

2. Same—Incontestable Clause—A life policy, void at its inception for lack of insurable interest, is not rendered valid by a clause declaring it incontestable after one year.

6. Witnesses—Parties—Transaction with Decedent—Testimony Favoring Other Parties—An assignee of a life policy, made

defendant by the administrator bringing action thereon, is competent to testify as to transactions with the deceased, in behalf of the company denying the validity of the policy.

J. J. ORR, T. S. ORR, V. H. ABBOTT and W. S. PRYOR, for appellant.

THOMAS W. BULLITT and JOHN S. GUANT for appellee.

(No briefs; record out of office.)

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

In December, 1900, George Bromley made an arrangement with Otis Bates by which he was to have his life insured for $1,000, and Bates was to pay the premiums and pay him $50 for the policy, which was to be assigned to Bates by Bromley. He made the application for the policy in Washington Life Insurance Company, which issued the policy on January 29, 1901, the policy being payable to his estate. Bromley and Bates then came to the office of the local agent. Bates was fixing to pay the premium and Bromley asked him if he would not take another $1,000 on the same terms. He agreed to pay the premiums and pay him $25 for another policy of like amount. Bromley then applied for another policy and the application was sent on, the agent retaining the policy which had come and Bates giving the agent a check for $127.64, the premium on the two policies. On February 18, 1901, Bates gave Bromley a check for $75 for the two policies as promised. The policies were assigned by Bromley to Bates. The assignment on the policies is dated March 25, 1901. The policies were never delivered to Bromley, but remained in the hands of the insurance agent until

the assignment was put on them and he then delivered them to Bates. When the subsequent premiums fell due on the policies they were paid by Bates; after this Bromley died and this suit was brought by his administrator to recover on the policies. Bates was made a defendant and by his answer set up that the policies belonged to him. The insurance company pleaded the facts above stated, insisting that the policies were a wagering contract and void. On final hearing, the court dismissed the petition of the administrator and he appeals.

The proof shows clearly that Bates had no insurable interest in the life of Bromley, and while the assignment on the policies is dated March 25, 1901, the proof is clear that the policies were taken out by Bromley for the purpose of assigning them to Bates, under the arangement that Bates was to pay him $75 for them and pay the premiums. In other words, the arrangement was simply that Bromley was to get $75 for having his life insured for Bates' benefit, Bates to pay the premiums on the policies. It is conceded that if the policies under this arrangement had been made payable to Bates they would have been void, as he had no insurable interest in the life of Bromley. But it is insisted that as they were made payable to Bromley's estate and were assigned by him to Bates, only the assignment is void, and that his administrator may recover of the insurance company. There would be force in this, if the policies had been delivered to Bromley and the assignment to Bates had been a subsequent and independent transaction. But the proof leaves no doubt that Bromley did not contemplate insuring his life for the benefit of his estate at any time. He con-

templated simply getting $75 out of the arrangement. The policies were never intended to be delivered to Bromley. Bates was to pay the premiums and get the policies. The policies did not become effective until the first premium was paid. Bates paid the premium upon the idea that the policies were to be assigned to him and for this reason they were left in the hands of the insurance agent until the assignment was made, the delay in closing up the matter being due to the fact that the parties had to wait for the second policy to come. To hold such an arrangement good would be to shut our eyes to the truth and to enforce a mere form. The law does not allow one who has no insurable interest in the life of another, to insure it for his benefit, for the reason that it is a mere wager and holds out a temptation to fraud, the insurer having no interest in the life of the assured and having a direct interest in his death. Basye v. Adams, 81 Ky. 368, 5 Ky. Law Rep. 91; Warnock v. Davis, 104 U. S. 779, 26 L. Ed. 924; Keystone Association v. Norris, 115 Pa. 446, 8 Atl. 638, 2 Am. St. Rep. 572; Steinback v. Diepenbrock, 158 N. Y. 24, 52 N. E. 662, 44 L. R. A. 417, 70 Am. St. Rep, 424. In the latter case the court said: "The insured, instead of taking out a policy payable to a person having no insurable interest in his life, can take it out to himself, and at once assign it to such person. But such an attempt would not prove successful, for a policy issued and assigned under such circumstances, would be none the less a wagering policy, because of the form of it. The intention of the parties procuring the policy would determine its character, which the court would unhesitatingly declare in accordance with the facts, reading the

policy and the assignment together, as forming part
of one transaction.'' The cases of Prudential Life
Insurance Company v. Cummins' Adm'r, 44 S. W.
431, 19 Ky. Law Rep. 1770, New York Life Insurance
Company v. Brown's Adm'r, 66 S. W. 613, 23 Ky.
Law Rep. 2070, and Griffin's Administrator v. Equit-
able Assurance Society, 84 S. W. 1164, 27 Ky. Law
Rep. 313, may be distinguished from this case. In
the first case, there was no assignment of the policy
to the person who paid the premiums and the court
simply held that the fact that a stranger paid the
premiums did not invalidate the policy. In the
second case, the assignee testified that he had no
interest in the policy until it was assigned to him sub-
sequent to the delivery. In the last case the insurance
company had paid the money to the persons to whom
the policies were payable and after this was sued
by the administrator of the assured. The court in
deciding that the insurance company was not liable
used this language: ''The transaction as to each
policy was clearly a speculation upon the hazard of
human life, and consequently a gambling scheme,
pure and simple which rendered the policies void,
because against public policy; and, if void, no cause
of action against appellee exists in favor of Griffin's
administrator for the recovery of the proceeds.''

It is also insisted for the plaintiff that as the
policies contain a clause to the effect that they are
incontestable after one year, the company cannot rely
upon this defense. But the incontestable clause is no
less a part of the contract than any other provision
of it. If the contract is against public policy the
court will not lend its aid to its enforcement. The
defense need not be pleaded. If at any time it

appears in the process of the action that the contract
sued upon is one which the law forbids, the court
will refuse relief.   The parties to an illegal contract
cannot by stipulating that it shall be incontestible,
tie the hands of the court and compel it to enforce
contracts which are illegal and void.   If this were
allowed, then the law might be evaded in all cases
and the aid of the court might be secured in aid of
its infraction.   In Hall v. Coppell, 7 Wall. 559, 19 L.
Ed. 244, the United States Supreme Court said:
"The defense is allowed, not for the sake of the
defendant, but of the law itself.   The principle is
indispensable to the purity of its administration.   It
will not enforce what it has forbidden and denounced.
The maxim, 'Ex dolo malo non oritur actio,' is lim-
ited by no such qualification.   The proposition to the
contrary strikes us as hardly worthy of serious
refutation.   Whenever the illegality appears, whether
the evidence comes from one side or the other, the
disclosure is fatal to the case.   No consent of the
defendant can neutralize its effect.   A stipulation in
the most solemn form to waive the objection, would
be tainted with the vice of the original contract, and
void for the same reasons.   Wherever the contamina-
tion reaches, it destroys.   The principle to be
extracted from all the cases is, that the law will not
lend its support to a claim founded upon its
violation."

Lastly it is insisted that Bates is not a competent
witness.   He cannot testify for himself as to any
transaction had with the decedent, but he may testify
for the insurance company.   The administrator by
making Bates a defendant to the action cannot
deprive the insurance company of the benefit of his

testimony. As between the insurance company and the administrator Bates does not testify for himself. Dovey v. Lam, 117 Ky. 19, 77 S. W. 383, 25 Ky. Law Rep. 1157.

Judgment affirmed.