Susan HERMAN, Lucy Prashker and
Martha Prashker,
Plaintiffs–Appellees,

v.

The PROVIDENT MUTUAL LIFE IN-
SURANCE COMPANY OF PHILA-
DELPHIA, Defendant and Counter-
claimant,

v.

Edward A. BRILL, Carmel P. Ebb, Paul
R. Frank, Stanley Futterman, Murray
Gartner, William E. Malarkey, Peyton
H. Moss, Eric Rosenfeld and Eric D.
Witkin, Counterclaim Defendants and
Certain Cross–Claimants,

Edward A. Brill, William E. Malarkey,
Carmel P. Ebb, Counterclaim Defen-
dants and Certain Cross–Claimants Ap-
pellees.

Paul R. FRANK, Stanley Futterman, Pey-
ton H. Moss, Eric Rosenfeld and Eric
D. Witkin, Cross–Claimants–Appel-
lants,

v.

Susan HERMAN, Lucy Prashker and
Martha Prashker, as Co–Executrices
under the last will and testament of
Herbert Prashker, and Murray Gartner,
Cross–Claim Defendants,

Murray Gartner, Cross–Claim
Defendant–Appellee.

No. 722, Docket 88–7876.

United States Court of Appeals,
Second Circuit.

Argued Jan. 31, 1989.

Decided Sept. 29, 1989.

Daniel P. Levitt, (Reid & Priest, Ronald S. Greenberg, Kramer, Levin, Nessen, Kamin & Frankel, New York City, of counsel), for cross-claimaints-appellants.

Robert P. Stein (Martin E. Karlinsky, Scheffler, Karlinsky & Stein, Robert D. Mercurio, Lane & Mittendorf, New York City, of counsel), for plaintiffs-appellees and cross-claim defendant-appellee.

Murray Gartner, New York City, pro se.

Before VAN GRAAFEILAND, CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal involves a dispute over 1.35 million dollars in insurance proceeds derived from certain life insurance contracts taken out on the life of a law firm's leading partner—a partner who died shortly after his firm dissolved. When sorrow strikes a thriving law firm, its happiness goes down and, at least in this case, its demise has tragic overtones because the present litigation over the insurance proceeds sets the insured's former law partners against his surviving daughters.

Appellants are Paul Frank, Stanley Futterman, Peyton Moss, Eric Rosenfeld, and Eric Witkin, five of the nine surviving former partners of the erstwhile law firm of Poletti Freidin Prashker & Gartner (Poletti Freidin). They appeal from a judgment of the United States District Court for the Southern District of New York (Haight, J.) entered on October 18, 1988 denying their claims to the proceeds of life insurance policies issued by Provident Mutual Life Insurance Company of Philadelphia (Provident) on the life of their deceased former partner, Herbert Prashker.

The district court dismissed appellants' claims to the insurance proceeds and also dismissed their claims against Murray Gartner, one of their former partners, for breach of fiduciary duty, conversion, and fraud. It granted summary judgment in favor of appellees Susan Herman, Lucy Prashker, and Martha Prashker, the daughters of Herbert Prashker who, the district court ruled, were the beneficiaries of the Provident policies.

## FACTS

This litigation began as a result of the dissolution of the Poletti Freidin firm and the subsequent death of its name partner Herbert Prashker. In late 1984 and early 1985 the firm experienced financial difficulties compounded by Prashker's serious illness that resulted in his extended absence from work. According to an affidavit submitted by appellant Futterman in support of a motion for partial summary judgment, when Prashker "was struck with cancer, became gravely ill and made known his desire to wrap up the firm's practice, it was clear that the firm would terminate." On March 29, 1985, its Partnership Agreement (Agreement) was amended to permit appellants Moss, Rosenfeld, and Witkin to withdraw as partners effective March 31, 1985, without creating an immediate obligation to make payments to them, which would otherwise have been required under Article X of the Agreement. By resolution dated May 9, 1985 the remaining partners voted to terminate the firm's practice at the close of business on May 31, 1985, and unanimously named Herbert Prashker and Murray Gartner as the liquidation committee.

Among the firm's assets were two life insurance policies purchased by the partners in 1970 and 1976 on the life of Prashker who, it is agreed, was the most significant member of the firm in terms of his capital account and generation of business. These policies were taken out pursuant to Article XIII(B) of the Agreement that provides, in part, as follows

Each partner consents to having his life insured by and for the benefit of the firm.... The cost of any such insurance shall not be deemed an expense and the proceeds of any such insurance shall not be deemed income of the firm. The cost of any such insurance shall be charged to the partners other than the partner whose life is insured in proportion to their interests in firm income for the fiscal year preceding the year in which such premium is due. The proceeds from any such insurance shall be credited to the capital accounts of the partners who contributed to the cost thereof in the same proportion as the most recently paid premium was charged to them.

If after having procured life insurance upon the life of any partner the firm shall thereafter decide to drop such insurance, the firm shall first offer to assign such policy to the insured person (whether or not he is then a partner), it being understood, however, that the firm shall have the right to continue any insurance in force despite the fact that the insured partner ceased to be a partner.

The first policy—Policy No. 3,005,150— was issued in May 1976 in the face amount of $1,000,000. It was issued initially as a five-year renewable term policy, and later, in November 1977, was converted to a whole life policy. The second policy—Policy No. 3,074,242—was issued in January 1980 in the face amount of $350,000, and it represents the conversion of a term policy originally purchased in 1970. In mid–1985 the two policies had an aggregate face value of $1,350,000, but borrowings had reduced their cash surrender value to $17,-500. The policies identify as owners and beneficiaries the "partners" of Poletti Freidin "other than the Insured."

Subsequent to the resolution to dissolve the firm, William Malarkey, the firm's acting managing partner, received a premium notice for Policy No. 3,005,150 that required that a semi-annual premium of $24,-500.05 be paid prior to May 4, 1985, in order to keep the insurance in effect. He arranged to have this payment converted to a quarterly premium payment, thereby deferring the payment of $12,000 until the liquidation committee had an opportunity to consider distribution of the firm's assets. According to Malarkey's deposition, the smaller quarterly premium payment prevented the policy from lapsing and preserved insurance coverage in the event it was decided, as part of the winding-up process, to offer to assign the policy to the insured in accordance with Article XIII(B) of the Agreement.

On May 31, 1985 Poletti Freidin ceased the practice of law. Following the dissolution, Prashker and Gartner, as members of the liquidation committee, were entrusted with winding up the firm's affairs and with distributing its remaining assets to the former partners. The firm's assets—excluding the Provident policies—exceeded its liabilities. Its only long term liability, the 23–year lease of its premises, had been discharged by agreement with the landlord. On the date that Poletti Freidin closed its doors, the firm had cash on hand of $260,-838 and accounts receivable of $815,741. The order of priority for distributions of its assets set forth in Article XVI(D) of the Agreement provides, in part, as follows:

After payment of all expenses of liquidation the net assets and proceeds of liquidation shall be applied in the following order:

1. To the payment of the debts and liabilities of the partnership.

2. To the repayment to each partner of his capital account.

3. To the payment to partners of all remaining assets and proceeds in accordance with their relative interests....

4. If the assets are not sufficient to pay the debts and liabilities of the partnership, the Liquidation Committee shall make an assessment to be in the same proportions as base level earnings.

In mid-August 1985, after dissolution— but before Poletti Freidin's affairs had been wound up by the liquidation committee and before any distributions had been made to the former partners under Article XVI(D)—Prashker inquired of the firm's insurance agent, Marshall Zeigen, how the committee might assign the Provident policies to him, as the insured. On August 15, 1985, prior to the due date of the next quarterly premium payment on the $1,000,-000 policy, Prashker and Gartner met as the liquidation committee and, without consulting or informing their former partners, executed forms of assignment provided by Zeigen which had the effect of transferring ownership of the policies to Prashker. In a contemporaneous "Memo to File" dated August 15, 1985, the liquidation committee determined (1) not to continue to pay premiums on behalf of Poletti Freidin with respect to either of the Provident policies, (2) to assign the policies to Prashker, and (3) to transfer the responsibilities for paying current and future premiums to the insured. Immediately following this assignment, and before his hospitalization, Prashker paid $11,702.20 in premiums due on the Provident policies ($7,541 on Policy No. 3,005,150 and $4,161.20 on Policy No. 3,074,242) and executed a change of beneficiary form naming the appellees, his three daughters, as beneficiaries.

In November, 1985 appellant Futterman asked Freida Rosenstein—the former Poletti Freidin bookkeeper who had been rehired by the partners to assist in the liquidation—whether the insurance premiums on the Provident policies had been paid. She responded that Gartner had asked her not to discuss financial matters with the former partners and that Futterman would have to speak directly with Gartner. Shortly thereafter, Futterman made an oral request of Gartner for an accounting and, by letter dated November 6, 1985, formally demanded that the liquidation committee account to the former partners "with respect to the collection and disposition thus far of the tangible and intangible assets of the firm."

Two days later, on November 8, Prashker wrote to the firm's accountants, Ernst & Whinney, requesting advice "as to the respective interests of the partners in the cash surrender value and dividend and interest obligations" of the two Provident policies. Prashker was rehospitalized on November 9 and died approximately two weeks later on November 27, 1985. On March 21, 1986, Ernst & Whinney allocated the modest cash surrender value of the policies to Gartner, Futterman, Frank, Malarkey, Brill, and Ebb, the partners of Poletti Freidin on the date of the firm's last premium payment.

## PRIOR PROCEEDINGS

In the course of administering their father's estate, Prashker's daughters filed written claims with Provident requesting, as the putative beneficiaries of the newly assigned policies, payment of the $1,350,-000 due. When Provident refused to pay the proceeds to the Prashker estate, the daughters filed this diversity action in the United States District Court for the District of Maine on January 2, 1986, naming Provident as the defendant. Provident answered and counterclaimed for interpleader pursuant to 28 U.S.C. §§ 1335 and 1397, asserting as the basis for the interpleader the adverse claims pressed by appellants. The matter was transferred to the Southern District of New York on April 24, 1986.

After the completion of discovery, appellants moved for partial summary judgment under Fed.R.Civ.P. 56 on their claims for breach of fiduciary duty against Gartner and on the claims sought to be asserted against the Prashker estate. Appellees and Gartner cross-moved for summary judgment dismissing the cross-claims and for summary judgment on the daughters' claim to the interpleaded proceeds of the two Provident policies.

The district court granted appellees' motions for summary judgment. It ruled that the former partners were foreclosed, by reason of the firm's dissolution, from asserting claims to the proceeds of either of the two policies. The district court found that the policies had been procured pursuant to Article XIII(b) of the Agreement which states that select partners' lives could be insured "by and for the benefit of the firm" and, quoting Article X(a), noted that the purpose of such insurance was "to insure the payout to the deceased partner of the amount to which he is entitled" upon the termination of his partnership interest by death. It concluded that the dissolution of Poletti Freidin divested appellants of "any ownership or other interest in the policies" and that the liquidation committee had not therefore breached any of its fiduciary duties when it transferred the policies to the insured without consulting the former partners.

In holding that the partners' insurable interest in Prashker's life had ceased to exist upon dissolution of the firm, the district court stated that

[I]t is only if one assumes the firm's continuing practice of law that surviving partners have an insurable interest in the continuing life of a partner.... To be a legitimate beneficiary of a life insurance policy, one must be in a position where he hopes for the continued life of the insured, will be damaged by the insured's death, and thus uses the policy proceeds to mitigate that damage. Where that particular relationship is lacking, and "the person to be benefitted by the policy is interested in the death rather than the life of the insured," public policy is con-

travened. (quoting *Couch on Insurance* 2d § 24:119).

There is little legal substance to these conclusions because, as a matter of New York law, they are incorrect. Section 3205(b)(2) of the New York Insurance Law clearly and unequivocally states that an insurable interest in the life of another need only exist "at the time when [the insurance] contract is made," and New York courts have long held that the subsequent termination of the insurable interest does not affect the rights of the owner of a policy that was valid at its inception. *See* N.Y.Ins.Law § 3205(b)(2) (McKinney 1985). Further, on the cross-motions for summary judgment, the district court impermissibly chose among competing accounts of the supposed "purposes" for which the policies were procured. Hence, we reverse and remand.

## DISCUSSION

In granting summary judgment to appellees, the district court proceeded from the erroneous premise that to be a legitimate beneficiary of a life insurance policy one must have an insurable interest at the time of the insured's death. The court also incorrectly assumed that the cessation of an insurable interest prior to the insured's death—as occurs upon the dissolution of a law firm—defeats any claim of right to the proceeds of policies that were valid at their inception. In holding that "it is only if one assumes the firm's continuing practice of law that surviving partners have an insurable interest in the continuing life of a partner," the district court adopted a view that is contrary to the common law development of rules pertaining to the requirement of an insurable interest and to the effect of its termination. More particularly, the district court's ruling contradicted the law of New York that governs this diversity case.

### I INSURABLE INTEREST

#### A. *Common Law*

At common law, it was early recognized that insurance contracts upon matters in which the insured party had no interest were wagering policies void as against public policy. With respect to life insurance upon the life of another without interest in that life on the part of the insured, the objection "was not the temptation to murder but the fact that such wagers came to be regarded as a mischievous kind of gaming." *Grigsby v. Russell*, 222 U.S. 149, 156, 32 S.Ct. 58, 59, 56 L.Ed. 133 (1911) (Holmes, J.). Such contracts were forbidden in New York by statute nearly 100 years ago. *See Steinback v. Diepenbrock*, 158 N.Y. 24, 30, 52 N.E. 662 (1899). What interest was needed in order to enter into a valid insurance contract on the life of another—one not barred as a wagering contract—was, as the Supreme Court noted, unclear. *See Connecticut Mutual Life Ins. Co. v. Schaefer*, 94 U.S. 457, 460, 24 L.Ed. 251 (1876). But the Supreme Court stated that a policy taken out in good faith to secure advantages from the continued life of another person created an insurable interest in that person's life. *Id.* at 460–61. Whether an insurance contract is valid at its inception or void as a wagering policy depends therefore on the intention of the parties at the time it is procured; that intention is a question of fact. *See Steinback*, 158 N.Y. at 31, 52 N.E. 662.

Although an insurable interest in another's life must exist at the inception of the policy in order to create a valid contract, that interest need not continue unless the policy so provides. *See Schaefer*, 94 U.S. at 463; *Steinback*, 158 N.Y. at 30, 52 N.E. 662. An incipient interest survives the ending of the insurable interest existing at the policy's inception and is therefore sufficient. Because an aim of the law is to prevent wagering on a life in which the insured has no interest, such aim is adequately safeguarded by examining the insurance contract at its formation. *See* Patterson, *Insurable Interest in Life*, 18 Col. L.Rev. 381, 415 (1918).

#### B. *New York Law*

The district court's failure to discuss the relevant sections of New York's Insurance Law dealing with insurable interests and

its similar disregard of controlling New York cases led it into inevitable error. For the past 30 years, that part of the Insurance Law governing the issuance of life insurance contracts has provided that

> No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or his personal representatives, or to a person having, *at the time when such contract is made*, an insurable interest in the person insured.

N.Y.Ins.Law § 3205(b)(2) (McKinney 1985) (emphasis added); *but see id.* § 3401 (requiring an insurable interest at the time of the loss in cases involving property or casualty insurance).

A contract to insure the life of another that is not supported by an insurable interest *at its inception* is contrary to the statute. The New York legislature concluded that permitting an individual without a substantial interest in the life of another to procure life insurance constituted wagering on another's life violative of public policy, and void under New York law. *See* G. Couch, R. Anderson & M. Rhodes, *Couch Cyclopedia of Insurance Law* § 24:119 (rev. 2d ed. 1984). That is, when the beneficiary's interest is in the insured's death rather than in his life, public policy is contravened. At the same time, the statute clearly states that when a policy is valid at its inception, it remains so even after the purchaser's insurable interest in the life of the insured has ended.

Thus, in New York, it has been established since before the turn of the century that termination of an insurable interest has no effect on the beneficiary's right to recover under a policy that was initially valid. In an early case, New York's highest court held that a beneficiary could collect the proceeds of a life insurance policy that had been procured for the specific purpose of securing a debt, though the debt had been fully repaid and the beneficiary therefore lacked an insurable interest at the time of the insured debtor's death. Observing that the policy need only be val-

id at inception, the court stated that the beneficiary's right "to recover the whole amount provided by the policy is well settled, even if the debt owing the [beneficiary] by the person whose life was insured ... had been paid in the lifetime of the insured...." *Wright v. Mutual Benefit Life Ass'n*, 118 N.Y. 237, 244, 23 N.E. 186 (1890).

The disposition of this appeal is also controlled by *Steinback v. Diepenbrock*, 158 N.Y. 24, 52 N.E. 662 (1899). That case involved the validity of an assignment of a life insurance policy—valid at its inception—to an assignee who had no insurable interest in the life of the insured either at the time of the assignment or at the time of the insured's death. Recognizing the strong public policy against wagering on the life of another, the court stated that when it appears that the insurance policy was purchased to enable otherwise uninterested parties to speculate on another's life, it "will declare such contract invalid, not because of the assignment, but in spite of it." *Id.* at 32, 52 N.E. 662.

In upholding the assignment at issue in *Steinback*, Chief Judge Parker emphasized that the requisite insurable interest existed when the contract was entered into and that its subsequent transfer to one without such an interest did not constitute "wagering on the life of another." Acknowledging that New York had long followed the English and majority American rule, the court stated

> While an insurable interest in the payee is necessary, in the first instance, to the creation of a valid contract, it is not necessary that such interest should continue. The case of a wife divorced from her husband will serve as an illustration. The policy taken out for her benefit during the existence of the married relation, is not affected by a subsequent severance of that relation through a decree of a court of competent jurisdiction by which she ceases to have an insurable interest in his life.

*Id.* at 30, 52 N.E. 662.

### C. *Application of New York Law*

Hence, the district court's conclusion here that permitting the former partners to

pursue their claims to the proceeds of the two Provident policies would contravene New York's "solemn public policy" against wagering on the life of another is squarely contradicted by New York's statutes and case law. Other courts have also determined that an insurance policy that was valid at its inception does not end on account of the cessation of the insurable interest. *See, e.g., Schaefer,* 94 U.S. at 461 ("We do not hesitate to say, however, that a policy taken out in good faith, valid at its inception, is not avoided by the cessation of the insurable interest, unless such be the necessary effect of the provisions of the policy itself."); *see also Wellhouse v. United Paper Co.,* 29 F.2d 886, 887 (5th Cir. 1929) ("A policy of life insurance originally valid does not cease to be so by the cessation of the beneficiary's interest in the life of the insured, unless so provided in the policy itself."); *Gerstel v. Arens,* 143 Fla. 20, 196 So. 616, 619 (1940) (holding that an insurable interest in a partner's life was not extinguished by dissolution of firm).

In addition, scholarly and practical commentary on the subject of the requirement of an insurable interest in the life of another describes the New York and majority rules as being the precise antithesis of the rule which the district court applied in the instant case. *See, e.g.,* 69 N.Y.Jur.2d *Insurance* § 889, at 313 (1988) ("[I]t is ... generally sufficient that an insurable interest exists at the inception of the [life insurance] contract, and it is immaterial that such interest ceases prior to the death of the insured. Accordingly, the right of a corporation to recover on a policy taken on the life of one of its officers is not affected by his severance of his connection with the company.") (citing, *inter alia, Steinback* and *Wright*); Annotation, *Insurable Interest of Partner or Partnership in the Life of Partner,* 70 A.L.R.2d 577, 582 (1960) ("A majority of the courts considering the question have held that if a partner or partnership has an insurable interest in the life of a partner at the inception of the policy, the termination of the partnership prior to the death of the insured does not effect [sic] the validity or enforceability of the policy."); W. Vance & B. Anderson, *Handbook on the Law of Insurance* § 31 at 185–87 (1951) ("[A] decrease, suspension, or entire termination of [an insurable] interest before the policy matures in no wise [sic] affects the assured's right of recovery under a [life insurance] policy valid at its inception.... [T]he dissolution of a partnership does not affect a policy taken out by one partner upon the life of another."); *see also* Patterson, *Insurable Interest in Life,* 18 Colum.L.Rev. at 415 ([A]n incipient interest is a "sufficient safeguard against promiscuous wagering on lives.... [T]he purpose of the contract is to be looked at as of the time when it was entered into. Thus, the dissolution of a partnership does not preclude recovery upon the life of one partner in favor of the other.").

The district court cited without comment cases from other jurisdictions in support of its ruling that the partners' ownership interest in the Provident policies ceased upon the dissolution of Poletti Freidin when they lost their insurable interest in Prashker's life. *Cf. Block v. Mylish,* 351 Pa. 611, 41 A.2d 731, 735 (1945); *Miller v. Hall,* 65 Cal.App.2d 200, 150 P.2d 287, 290 (1944); *Ruth v. Flynn,* 26 Colo.App. 171, 142 P. 194, 197–98 (1914). These cases, which adopt a minority rule followed in only a handful of jurisdictions, are of no precedential significance in the present matter. As a consequence, we must reverse the judgment insofar as it held that appellants' interest in the Provident policies was destroyed by the dissolution of Poletti Freidin.

## II PROPRIETY OF SUMMARY JUDGMENT

■ Because we have determined that appellants' ownership interest in and rights to the proceeds of the Prashker policies did not automatically expire upon dissolution of the partnership (and the concomitant termination of their insurable interest), the question of divining the partners' intent at the time the policies were taken out on Prashker's life is one that we remand to the district court for it to make appropriate findings.

Summary judgment is of course inappropriate where "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The party opposing summary judgment must be given the benefit of all favorable inferences in determining whether an issue of fact exists that requires a trial. Here, though adopting a plausible interpretation of the documents and deposition testimony before it, the district court selected between competing accounts of why the Provident policies were procured. The issue of the partner's motivation and intent when the insurance was purchased is clearly a question of fact not properly resolved on a motion for summary judgment. *See, e.g., Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir.1983) (When intent is an issue, summary judgment is inappropriate); *cf. Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984) (Subjective issues regarding state of mind, motive, sincerity or conscience make summary judgment inappropriate).

Although the district court carefully considered the Partnership Agreement in arriving at its decision, it completely disregarded the provisions of the insurance policies themselves, which expressly identified their "owners" and beneficiaries as the "Partners of Poletti Freidin Prashker Feldman & Gartner, other than the Insured." Confronted with a maze of contradictory affidavits and deposition testimony concerning the partners' motivation and intent—and having failed to analyze the effect of the operative language of the Provident policies—it was inappropriate for the district court to grant summary judgment to appellees on the genuine factual issues present here. Instead, a trial is required.

### CONCLUSION

For the above-stated reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.